**UNITED STATES of America,
Plaintiff-Appellee.**

v.

**Robert Lee FRICK and Quimet John
Petersen, Defendants-Appellants.**

**No. 72-2275.**

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1973.

Rehearing and Rehearing En Banc Denied
March 15, 1974.

---

1. Note, Joint and Single Trials under Rules 8 and 14 of the Federal Rules of Criminal Procedure, 74 Yale L.J. 553, 554–56 (1965).

Malcolm G. Mundy, Jr., New Orleans, La., Raymond A. McGuire, New Orleans, La., for Petersen. Louis R. Koerner, Jr., James C. Murphy, Jr., New Orleans, La., for Frick (court appointed).

Gerald J. Gallinghouse, U. S. Atty., Robert L. Livingston, Mary William Cazalas, Asst. U. S. Attys., New Orleans, La., for the United States.

Before GOLDBERG, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Defendants Frick and Petersen were convicted on five counts under 18 U.S.C.A. §§ 2, 371, 1341 and 1343 of conspiring to defraud and defrauding certain persons through a sham loan brokerage business by using the mails and interstate telephonic communications. Only the question concerning the legality of a warrantless search of defendant Frick's briefcase requires discussion of the reasons for our holding that the search was valid incident to arrest. The other seventeen errors asserted by defendants are subject to affirmance without extended discussion.

The morning after his indictment, defendant Frick was arrested at his car in the parking lot adjacent to his apartment building. At the time of the arrest, F.B.I. Agent McDaniels spotted an attache case lying on the back seat of Frick's car, approximately two feet from the defendant. Recognizing the attache case as Frick's and knowing that Frick had used it on numerous occasions during his "loan negotiations," McDaniels seized the case on probable cause that it contained evidence pertinent to the arrest. An immediate check of its contents bore out McDaniels' suspicions: the case contained documents used in the fraudulent transactions. The defendants assert that the seizure and subsequent search of the attache case without a warrant

violated Frick's Fourth Amendment rights.

### I.

■ Only defendant Frick has standing to contest the search and seizure. Under the test recently established by the Supreme Court, defendant Petersen

(a) [was] not on the premises at the time of the contested search and seizure; (b) had no proprietary or possessory interest in the premises; and (c) [was] not charged with an offense which includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure.

Brown v. United States, 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973). Petersen contends that he has met the "proprietary interest" test by being in partnership with defendant Frick. Partnership, however, did not give him a proprietary interest in Frick's attache case, the thing searched.

### II.

■ For a warrantless search to be valid under the Fourth Amendment, it must fall within one of the "few specifically established and well-delineated exceptions." Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). The case at bar meets the required exception as a search incident to a lawful arrest.

[I]t is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on

the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

■ Although there is some dispute in the record as to the exact distance between Frick and the automobile,[1] and whether the door was open or closed, these discrepancies become inconsequential when the reasonableness of the search is tested by the *Chimel* standard. The automobile and the attache case were within the area of Frick's immediate control. The attache case was not isolated or hidden in some distant room of the house or securely locked in the trunk of the car. It was in plain view and readily accessible to Frick. The possibility of it housing, not only the evidence found, but also a dangerous weapon was not remote.

The exigencies of the situation plainly justified Agent McDaniels' actions. The officers were dealing with objects which are extremely mobile: the automobile and the attache case. There is the possibility that codefendant Petersen might have removed either of them prior to the officers obtaining a warrant.[2] Some other friend unknown to the officers might have done likewise. It would be reasonable to expect Frick would be released on bond within short order and again be free to exercise his control over the automobile and the attache case.

---

1. Agent McDaniels testified that the distance was 15-16 inches; Frick, testifying before the magistrate, stated it was two feet.

2. Defendant Petersen voluntarily appeared before the magistrate after learning of the indictments. The arresting officers did not

know of this. At the time of Frick's arrest, two of the officers had failed to locate Petersen at his residence and had joined the other officers at Frick's residence, in probability expecting to possibly locate Petersen there.

To prevent these possibilities, Frick contends Agent McDaniels could have stationed an officer with the automobile while another proceeded to secure the warrant, or in the alternative, that the officers take the attache case but postpone their search until the impartial magistrate issued a warrant. The defense overlooks a vital Fourth Amendment interference: by stationing a guard over the car or removing the attache case while securing the warrant, a definite "seizure" would take place. This is an intrusion on the defendant's rights, just as much as the search.

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. ·Given probable cause to search, either course is reasonable under the Fourth Amendment.

Chambers v: Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975. 1981, 26 L.Ed.2d 419 (1970).

On facts similar to the case at bar, the Ninth Circuit has recently ruled on the propriety of seizing an automobile or container located therein before obtaining a search warrant.

> Here the police might have seized the car pending a magistrate's determination. This would have been the lesser intrusion upon Evans' rights, but it would have been the greater intrusion upon the rights of Miss Kane, the owner of the car. On the other hand, it is easy to say that the footlocker could be confiscated by the police and taken to the magistrate, but a seizing would then have already occurred—a substantial interference. Standing guard still represents the same interference with property rights as well as an unnecessary use of law enforcement personnel. Under these circumstances, either course might be reasonable under the Fourth Amendment, but the immediate search was preferable. Given probable cause,

we hold that the necessary exigent circumstances were present for a warrantless search.

United States v. Evans, 481 F.2d 990, 994 (9th Cir. 1973). Given the probable cause in the case at bar, we hold that the immediate search was reasonable under the circumstances.

The defense also contends that officer McDaniels admittedly knew of the attache case for a considerable period prior to the arrest, knew of its possible contents, and had adequate time to secure a search warrant after the indictment and prior to leaving on his arrest mission. This contention misreads the nature of the facts which gave probable cause to believe the case contained evidence.

An attache case is designed to be a convenient receptacle to temporarily carry while in transit a small quantity of papers or items of like nature. The probability that it contains business documents flows from the fact that the case is being used in conjunction with business travel. The probability that Frick's attache case contained documentary evidence at that time arose from a combination of factors: (1) Frick had utilized the case to carry loan documents on a previous out of state business trip; (2) he was arrested on a work day; (3) at his automobile; (4) at a time in the morning which is normally associated with going to work; and (5) he had the attache case with him. Agent McDaniels could not have known that all of these events would coincide prior to the time of the arrest. Yet it was because these factors did coincide that probable cause existed.

Finally, the defense argues under *Chimel, supra,* that the arrest was "staged" to enable Agent McDaniels to search and seize the attache case. Frick was not arrested immediately after the indictment was returned but was arrested the following morning. The arrest took place in the parking lot rather than Frick's apartment. Arrest immediately after the return of the indictment is

not required, however. It is sufficient that the arrest be within a reasonable time after the indictment. United States v. Palmer, 435 F.2d 653, 655 (1st Cir. 1970). Agent McDaniels testified that Frick was not arrested in his apartment because the officers had difficulty in locating it in the building. Immediately thereafter, Frick was discovered in the parking lot, and the arrest completed. McDaniels testified that he had not observed the attache case prior to the arrest. This evidence does not support the argument that the arrest was "staged" to permit the search and seizure.

### III.

The other challenge to the convictions of the defendants are without merit and we address them *seriatim*, combining some, without regard to which defendant asserted the error on this appeal.[3]

(1) The evidence presented was sufficient to support the convictions. United States v. Glasser, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

(2) The District Court's instruction to the jury concerning circumstantial evidence was not erroneous. United States v. Stokes, 471 F.2d 1318 (5th Cir. 1973); United States v. Warner, 441 F.2d 821, 825 (5th Cir.), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L. Ed.2d 58 (1971).

(3) Since the entire transcript was presented to defense counsel, the issue on appeal is moot.

(4) There was no abuse of discretion in the denial of the motions for severance and for continuance. Peterson v. United States, 344 F.2d 419 (5th Cir. 1965).

(5) There was no abuse of discretion in denying the submission of questions proposed by the defense to the prospective jury on *voir dire* examination. *See* United States v. Jackson, 448 F.2d 539 (5th Cir. 1971). The *voir dire* transcript does not reveal any prejudice to the defendants through the jury selection process.

(6) The prosecutor's statements were not sufficiently prejudicial to require reversal.

(7) It was within the discretion of the trial judge to allow the "sucker" exhibit to be introduced as evidence.

(8) There was no error in allowing the Government to present evidence of other crimes to show system and intent. United States v. Goldsmith, 483 F.2d 441 (5th Cir. 1973); United States v. Harrison, 461 F.2d 1127 (5th Cir. 1972).

(9) Brady v. Maryland, 373 U. S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), does not require all evidence to be produced to the defense, just that which is material. United States v. Jordan, 399 F.2d 610, 615 (2d Cir. 1968). Nor is *Brady* applicable at pre-trial stages. Archer v. United States, 393 F. 2d 124, 126 (5th Cir. 1968).

(10) The Government has no duty to call all of the witnesses it subpoenas. United States v. Harper, 460 F.2d 705, 706 (5th Cir. 1972).

(11) The jury was properly instructed concerning the indictment, and could have copies of it during deliberation. See United States v. Baker, 418 F.2d 851 (6th Cir. 1969), cert. denied, 397 U.S. 1015, 90 S.Ct. 1248, 25 L.Ed.2d 429 (1970).

(12) Taken as a whole, the jury instruction to disregard the testimony of Mr. Franks was proper since the testimony was hearsay.

(13) The trial judge could consider the defendants' use of assumed names since the only limitation on the information the judge is permitted to consider in sentencing is that which in fact is not true. Davis v. United States, 376 F.2d 535 (5th Cir. 1967).

---

3. Petersen claims eighteen errors were committed; Frick bases his appeal on six.

(14) Cruel and unusual punishment did not result from sentencing the defendants to prison rather than probation.

(15) It was not error for the trial judge to deny defendants' motions for acquittal and new trial.

Affirmed.

GOLDBERG, Circuit Judge (concurring in part and dissenting in part):

I concur in Parts I and III of the opinion of my brother Roney, but I am compelled to dissent from the panel's holding that the seizure and search of the defendant Frick's briefcase was lawful. This Circuit has already heard from me at some length on what I feel to be the erosion of Fourth Amendment guarantees by a hostile judiciary, *see* United States v. Colbert and Reese, 5 Cir. 1973, 474 F.2d 174, 179; and it is with some reluctance that I have undertaken yet another dissent in the area. My brothers may well hope, as I do, that this will be my postlude to the dirges that have been scored for the Fourth Amendment, but I cannot absolutely forswear future elegies, for the concepts of individuality and privacy expressed in that Amendment are sacred to me. This latest exercise in loose construction, if not distortion, of both the language of the Constitution and the applicable decisions of the Supreme Court requires an answer. For that reason I regretfully, but firmly, dissent.

Our inquiry must begin, as the panel opinion itself seems to accept, with the recognition that warrantless searches are always exceptions to the general Fourth Amendment rule. As such they are "per se unreasonable" unless justified by certain exigent circumstances, Coolidge v. New Hampshire, 1971, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L. Ed.2d 564; nor are these exigencies to be easily found. The Supreme Court has persistently reminded us that the exceptions are few in number, Katz v. United States, 1967, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; limited in construction, Jones v. United States,

1958, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514; and difficult of proof, McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153. Only when these admonitions are firmly in mind is it possible to appreciate the broad swathe the panel's opinion cuts through Fourth Amendment law.

Defendants, Robert Lee Frick and Quimet John Petersen, were indicted on five counts of conspiracy and fraud on November 23, 1971. On the following morning five agents of the Federal Bureau of Investigation arrived at Frick's apartment armed with an arrest warrant. Defendant Frick was taken into custody in the parking lot of his apartment building. At the time of the arrest the agents patted Frick down and handcuffed him. During the course of this arrest procedure agent McDaniels observed a briefcase on the floor of the back seat of Frick's car. McDaniels removed the briefcase and searched it on the scene. Certain papers were discovered as a result of this search which were introduced into evidence at the trial. This followed the decision of a magistrate and subsequently of the trial judge himself that the actions of the agent had not violated the Fourth Amendment's guarantee against warrantless searches. The panel majority affirms this disposition on what appear to be two distinct bases: (1) the search was justified under Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685, as incident to a lawful arrest; and (2) the search was within the guidelines laid down in Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, for cases involving automobiles.

*I. Search Incident to Arrest*

The standards for acceptable action under the Fourth Amendment as expressed in Supreme Court opinions have seldom been models of clarity. But the parameters of *Chimel* come as close to precision as seems possible in an area of the law necessarily concerned with "reasonable" action under various "exigent"

circumstances. *Chimel* provides that *at the time and place of arrest* the apprehending officers may conduct "a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. at 763, 89 S.Ct. at 2040.

At the time of the search in question here the defendant Frick was in the custody of five federal agents; he either had been, or was in the process of being, handcuffed; and he stood in an open parking lot between one and one half and two feet away from his automobile. On the basis of these facts my brothers in the majority conclude that a search of the briefcase was justified out of a reasonable fear that Frick might gain access to its contents and either turn a weapon on the agents or dispose of evidence. However, the opinion is understandably devoid of any indication of the manner in which Frick, an individual with no previous record for recklessness or violence, might have accomplished the rather extraordinary feats of overpowering his trained captors, breaking his bonds, and destroying crucial evidence.

By any reasonable interpretation, the area within Frick's control at the time of this search amounted to no more than his own person, under the most generous constructions of *Chimel*. While it must be admitted that had Frick been possessed of the skill of Houdini and the strength of Hercules, he might conceivably have reached the contents of the briefcase, neither the panel majority nor the court below placed him in such legendary company. The possibility of legerdemain cannot create the justification for a warrantless search, at least under my reading of Supreme Court decisions in this area. I do not believe my vision distorted or my view myopic.

Had the agents nevertheless feared that Frick might reach exceptional levels of strength and cunning as a result of his desperate plight, surely the simple expedient of closing and locking the car door would have had the salutary effect of protecting the defendant's interests in privacy while guarding the safety of the officers and the integrity of the investigation from an irrational rampage.[1] Indeed, if the federal agents legitimately thought that Frick might gain access to the briefcase, their conduct in removing it from the car and opening it in his presence appears precisely calculated to increase, rather than remove, that possibility. If, as agent McDaniels testified, the car door was open at the time of the arrest, the commonplace action of depressing the lock and closing the door would have provided the maximum possible protection against the dangers of violence and destruction outlined in *Chimel*.

My brothers in the majority, however, ignore both the fact of Frick's captivity and the clear indication that the agents did not fear possible destruction at his hands. They choose instead to adopt what amounts both literally and figuratively to a yardstick test. Under the view of *Chimel* advocated here the reason for the exception to the warrant requirement—the possibility of serious physical destruction at the time of arrest—is evidently considered irrelevant. The Court looks not at all to the question of whether the briefcase was realistically within Frick's reach. Rather, both the limited standards of *Chimel* and the physical realities of the arrest are subordinated to the panel's own extraordinary theory of Frick's capabilities. Although fictions and physical impossibilities may be tolerable in the in-

---

1. Judge Roney dismisses the factual dispute as to whether the car door was open or shut at the time of the arrest as irrelevant to the disposition of this case. Although I am of the opinion that, on the facts of this arrest, the automobile and its contents were well outside the scope of Frick's immediate control, regardless of the state of the car door, it is certainly conceivable that the additional barrier of a closed car might be important in the decision of a closer case.

terpretation of certain arcane branches of real property law, they have no place in the application of constitutional protections.

Certainly the possibility exists that opinions written and judgments made in the isolation of appellate chambers may too easily ignore the harsh realities of law enforcement, as many critics of the expansion of constitutional rights in the criminal field have been anxious to point out. But the panel's application of *Chimel* to the facts of Frick's arrest demonstrates that courts may also err by exaggerating both the ingenuity of criminal accused and the legitimate fears of policemen. Such judicial timidity leads to ivory tower speculations entirely unrelated to the actions or experience of the officers in the field.[2]

### II. The Automobile Search

Though the panel places its primary reliance on the *Chimel* exception to the warrant requirement, the Government in its brief before this Court concentrated largely on the so called "car exception" to the search warrant requirement first recognized in Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543, and most recently explicated by the Supreme Court in Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The majority's

emphasis on the "mobile" nature of Frick's car and the citation to Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, a decision which relied heavily on *Carroll*, indicate that at at least some support was drawn from this argument. At the outset it should be noted that any holding in favor of the applicability of the *Carroll* exception only takes the Government over the first hurdle—it justifies the removal of the briefcase from Frick's car. The subsequent warrantless inspection of the contents of the closed briefcase requires independent analysis.

There are two general requirements for the application of *Carroll* and the consequent warrantless search of a motor vehicle. First, the officers must have probable cause to believe that the car contains contraband or other evidence. Second, certain exigent circumstances must exist such that "it is not practicable to secure a warrant." Coolidge v. New Hampshire, 402 U.S. at 460, 91 S.Ct. at 2034, quoting Carroll v. United States, 267 U.S. at 153, 45 S.Ct. 280. The facts of this case fail to demonstrate either of these essential elements.

### A. Probable Cause

I concur without reservation in the conclusion of my brothers that no proba-

---

2. Though the majority does not explicitly rely on it, the passing reference to the fact that the briefcase was in "plain view" of the officers might be taken as an appeal to that exception to the warrant requirement. However, any such attempt would face two insuperable obstacles. The first was succinctly outlined in Coolidge v. New Hampshire, 1971, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564.

". . . [P]lain view *alone* is never enough to justify the warrantless seizure of evidence. . . . Incontrovertible testimony of the senses that an incriminating object is on the premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure."

In this case, as in *Coolidge*, the "premises" of the criminal suspect consisted of his auto-

mobile. Since the FBI agents did not have to enter the car in order to effect Frick's arrest, they had no independent justification for the intrusion on a constitutionally recognized zone of privacy. In the absence of such a justification, the plain view doctrine cannot apply.

Even had the officers been entitled to enter the car, however, the resort to plain view would fail. Frick challenges the introduction of the contents of the briefcase and not the case itself. Those papers were most certainly not in view at all until the seizure and search had been completed. If the plain view doctrine is justified here, then it could as easily be used to justify the warrantless seizure and search of a desk, cabinet, or closet on the premises of the accused at the time of his arrest on the basis of an officer's suspicion or hope that they contained evidence of the crime. This is precisely the kind of broad search *Chimel* was written to curtail.

ble cause existed to support a search warrant for Frick's briefcase prior to the day of the arrest. The panel opinion, however, purports to find the missing elements of probable cause merely in the fact that the briefcase was observed in the defendant's car on a weekday morning. The record does not even disclose that the agents had seen Frick carrying the briefcase on the morning of the arrest. For all that agent McDaniels and his cohorts knew, it had been sitting on the floor of Frick's car for days. Surely the panel does not intend to hold that the arrest of an individual for a crime involving the use of paper automatically creates probable cause to believe that any or every receptacle of the accused is a storehouse for evidence. To say that the arresting officers had probable cause to believe that the briefcase contained evidence of the crime endows those officers with a supernatural clairvoyance. The justification of an arrest does not automatically litmus itself into a justification for a search. There are no facts supporting a belief that the probable cause for arrest and the probable cause for the search were identical twins. To hypothesize that the briefcase contained documents of guilt mocks the logic of Fourth Amendment analysis. Countless innocent items could have been contained within its immobile and non-violent exterior, and constitutional guarantees are not to be nullified by speculation. In this case the officers' suspicions were borne out. But the Supreme Court has made it clear, beyond room for intelligent dispute, that mere suspicion does not constitute probable cause. *See* Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Beck v. Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

### B. Exigent Circumstances

Even granting that probable cause existed for the belief that Frick's automobile contained evidence of the crime, the search must still be justified by the presence of exigent circumstances which made it impractical for the FBI agents to obtain a warrant. There is no other responsible reading of the Supreme Court's decisions, and I interpret the panel's references to various "exigent" factors as a tacit recognition of that fact. *See* Carroll v. United States, *supra*; Brinegar v. United States, supra; Chambers v. Maroney, supra. The very notion of a category of automobile searches is really no more than the expression of the fact that these extraordinary circumstances requiring immediate action are more likely to occur when the locus of the search is as frequently and easily moved as an automobile.

The Supreme Court's recent decision in Coolidge v. New Hampshire involved, like the case before us, the warrantless search of an automobile parked at the defendant's residence. In considering the arguments advanced in support of the police action under *Carroll* and *Chambers*, the Court noted the categories of exigent circumstance necessary to trigger the warrant exception:

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile." 403 U.S. at 461–462, 91 S.Ct. at 2036.

The Government and the panel evidently attempt to bring this case within the parameters defined in *Coolidge* and earlier decisions on the basis of the fact that Frick's co-indictee, Petersen, had not yet been taken into custody at the time of the search, and would therefore

be likely to disturb the evidence.[3] It should first be noted that, if the agents even remotely feared or suspected that Petersen would come to Frick's apartment building after the arrest, their conduct was little short of amazing. The record shows that originally a portion of the five agent detachment which participated in the arrest of Frick had been detailed to apprehend Petersen. Unable to locate the latter at his home, this detail tagged along on the Frick arrest. The panel opinion now asks us to believe that trained agents of the FBI, having failed in their initial assignment to apprehend a man, and *having reason to believe that he would arrive at a certain location,* blithely departed that location leaving no one behind to stand guard. To my mind, the action of the agents in departing the scene speaks more convincingly than a volume of post

3. The panel opinion mentions three other allegedly "exigent" circumstances justifying the search of · Frick's car and briefcase. However, all are so obviously contrary to both the law and common experience, that I have difficulty viewing them as anything more than makeweights, designed to obscure rather than advance constitutional analysis.

(1) *The* mobile *character of the attache case:* Every Supreme Court decision emphasizing the necessity of a search warrant and the narrow, technical nature of the exceptions has involved evidence no less movable than the briefcase and papers considered here. *See, e. g.,* Coolidge v̇. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (vacuum sweepings) ; Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (coins). At no point has it ever been suggested by the Court that exigent circumstances exist whenever the desired evidence is neither bolted to the floor nor too heavy to be moved. Indeed, the opinion of the Court in *Coolidge* treated any such contention as the ultimate *reductio ad absurdum* of all faulty Fourth Amendment analysis :

". . [A] good number of the containers that the police might discover on a person's property and want to search are equally [as] movable [as an automobile], e. g., trunks, suitcases, boxes, *briefcases,* and bags. How are such objects to be distinguished from an unoccupied automobile—not then being used for any illegal purpose—sitting on the owner's property? It is true that the automobile has wheels and its own locomotive power. But given the virtually universal availability of automobiles in our society there is little difference between driving the container itself away and driving it away in a vehicle brought to the scene for that purpose. Of course, if there is a criminal suspect close enough to the automobile so that he might get a weapon or destroy evidence within it, the police may make a search of appropriately limited scope. Chimel. . . . But if Carroll v.

United States . . . permits a warrantless search of an unoccupied vehicle, on private property and beyond the scope of a valid search incident to an arrest, then it would permit as well a warrantless search of a suitcase or a box. We have found no case that suggests such an extension of Carroll." 403 U.S. at 461, n. 18, 91 S.Ct. at 2035. [Emphasis added] An exception which the Supreme Court was unable to find and unwilling to make in its own cases has evidently developed, contrary to all precedent, in this Circuit.

(2) *The possibility that an unknown friend of the defendant might remove the evidence:* Presumably even the most disagreeable suspect will have a few friends able and perhaps willing to cart off incriminating evidence. But once again, the panel presents no case support for the argument that this *possibility* creates an exigent circumstance. And even in the case of a confederate on the loose, the law requires at least some indication that the destruction of evidence is likely or imminent. We have nothing here but the Court's ruminations over what the agents might have feared.

(3) *The possibility that the suspect himself, once released on bail, will destroy the evidence:* At this point the opinion enters the realm of the surreal. It is, of course, blatantly incorrect even to suggest that the booking and bail procedure is conducted more speedily than the process for submitting affidavits to a federal magistrate. More importantly, the panel opinion once again asserts as an exceptional, exigent circumstance a condition that has been and will continue to be present in virtually every criminal case. If the panel is correct then exigent circumstances justifying a search on probable cause alone will exist in every case, save that of a friendless defendant, ineligible for bail, or one in possession of indestructible and unmovable evidence. It is beyond me how the majority can reconcile these alleged "exigencies" with its own admission that the exceptions to the warrant requirement are few and well-delineated.

hoc judicial theorizing. At the very least, it points up the failure of the Government to fulfill its burden of clearly demonstrating its contention that there was need for. an exception to the warrant requirement, United States v. Jeffers, 1951, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59, because of a reasonable fear on the part of the agents that "confederates [were] waiting to move the evidence." 403 U.S. at 462, 91 S.Ct. at 2036.

The size of the FBI detachment present at Frick's apartment on the morning of his arrest and the nature of its assignments are strong indications of the inapplicability of *Carroll* and its progeny to this case in another sense as well. Surely in this instance sound law enforcement and the fullest possible protection of Fourth Amendment rights coincided in requiring that the car and its contents remain undisturbed pending application for a warrant, but that at least one of the five agents remain behind on watch. My brother Roney attempts to avoid any such approach by contending that, since the stationing of an agent at the car would itself constitute an intrusion on Frick's Fourth Amendment rights, the further intrusion of the search and seizure is without additional constitutional significance. I hope that in my shock at such a contention I am not being unfair to the majority; but I can only interpret the opinion as holding that once a small infringement on individual rights is accepted in the name of some important state interest, then any added burden is necessarily proper. The theory is apparently that, if you can take an inch, you are constitutionally entitled to a mile. Even to state the proposition is to reveal its fragility. The holding in Chambers v. Maroney, supra, on which the panel evidently relies, is not to the contrary. *Chambers* held that, given the probable cause and exigent circumstances necessary for a highway search under *Carroll,* the police could instead impound the car and conduct the search at the station. In *Chambers* the final intrusion rested on

independent constitutional justifications; and in *Coolidge* a majority of the Supreme Court explicitly rejected the notion, evidently advanced by the panel here, that one category of Fourth Amendment exception can justify intrusions different in degree or type. 403 U.S. at 473–484. Indeed, the *Coolidge* opinion specifically noted the presence of police guards on duty at the defendant's house after his arrest as one factor obviating the need for an. immediate search. 403 U.S. at 461, & n. 18, 91 S. Ct. 2022.

The final deficiency in the panel opinion lies in its failure to explain why, granting for the moment a right to seize the briefcase, the search itself could not have awaited a presentation of the facts to a neutral magistrate. Certainly the panel majority cannot hope to rest behind the discredited notion that lesser intrusions can justify greater ones. *See* United States v. Garay, 5 Cir. 1973, 477 F.2d 1306; United States v. Brett, 5 Cir. 1969, 412 F.2d 401, 406. Viewed from any angle there were no circumstances requiring the agents to search without a warrant at the time of Frick's arrest. And in the absence of such compulsion, the representatives of the United States, whether officers in the field or judges on the appellate bench, are never justified in departing from the Constitution's command that searches be authorized by warrants.

In epilogue I can only express my hope that the current judicial mood will not result in the relegation of the Fourth Amendment to oblivion. Privacy meant so much to the founding fathers that, in order to guarantee its primacy, they were willing to countenance the possibility that criminals might at times conceal the fruits or other indicia of their crimes. The wiser course for both judges and private citizens is to heed their teachings on the fundamental requirements ·of a free society. This is my judicial philosophy—strict constructionism, if you please.

Before GOLDBERG, CLARK and RONEY, Circuit Judges.

PER CURIAM:

On petitions for rehearing, we have considered whether our opinion sets any precedent in the law of search and seizure as it applies to so-called exigent circumstances unrelated to the execution of a warrant for arrest. Believing as we do, that all facts must be considered in determining the reasonableness of a search without a warrant, our holding here is not compartmentalized so as to make any facts unimportant and we voice no opinion whatsoever as to whether we would hold this search reasonable absent the arrest warrant or upon any of the other facts differing from those at bar. The petitions for rehearing are denied.

Judge Goldberg would grant the petitions for rehearing for the reasons set forth in his dissent to the panel opinion.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the petitions for rehearing en banc are denied.