## State v. Milter
*[Cite as 7 AOA 324]*

*Case No. 58826*
*Cuyahoga County, (8th)*
*Decided October 4, 1990*

*John T. Corrigan, Cuyahoga County Prosecuting Attorney, Karen L. Johnson and Nancy R.*

McDonnell, *Assistant Prosecuting Attorneys, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, for Plaintiff-Appellant.*

*Gerald Gold and John S. Pyle, Gold, Rotatori, Schwartz & Gibbons Co., L.P.A. 1500 Leader Building, Cleveland, Ohio 44114, for Defendant-Appellee.*

*Per Curiam.*

On the evening of April 7, 1989, at approximately 7:30 p.m. detective David Chipps, an 18-year veteran of the Shaker Heights Police Department, was on routine patrol. Chipps had been a member of the strike force (plain clothes) unit since 1976. As a member of the strike force, he had participated in investigations of drug trafficking.

Chipps was on routine patrol in a parking lot at the corner of Lomond and Chagrin Boulevard. He observed a male get out of a gray Camaro automobile, who appeared to be looking around the parking lot. His attention was drawn to this individual, later identified as Courtney Johnson. He then saw a red vehicle pull into the parking lot. He moved to a position about 150 feet from the Camaro. Johnson got back into the Camaro on the passenger side of the two-door vehicle. The defendant then got out of the red vehicle, a Subaru station wagon, and walked toward the Camaro, about 75 feet away. He walked directly to the passenger side of the Camaro. Defendant leaned in and talked to the passenger. It was at this point that Chipps called his supervisor and asked for assistance due to the belief that a drug transaction might be occurring.

Defendant then left the Camaro and walked back to his vehicle, opened the door and removed a white plastic bag. He walked back to the passenger side of the Camaro and continued to converse with the occupants. He then removed a gray object from the plastic bag, which the officer believed to be a cassette player. (It turned out to be a bag for holding cassettes.) About 40 seconds later, the passenger door opened and the defendant entered the rear seat of the Camaro. There were now three people in the Camaro: "the passenger, Courtney Johnson; the driver, later learned to be Michael Intihar; and the defendant." Intihar and Johnson turned in their seats and talked to the defendant. The officer could observe motion; specifically hands moving back and forth. Defendant remained in the Camaro for several minutes and as he exited the vehicle, Chipps advised the other officers, who had since arrived, that he wanted the defendant stopped. He believed a drug transaction had occurred. (He had originally advised them over the radio that he believed a drug transaction was taking place in the parking lot.)

Chipps and Sgt. James D. Eden stopped the defendant as he was about to enter his vehicle. He had opened the door to the passenger side when he was stopped. Other officers stopped the Camaro from leaving the lot. Eden stayed with the defendant and Chipps walked back to the Camaro. As Chipps approached the Camaro, he observed Johnson trying to conceal the plastic bag (that was in his left hand) behind the seat. He advised both of them to get their hands up where they could be seen. He looked into the car and observed a plastic bag containing green vegetable matter, which he believed was marijuana. The defendant, after being detained, had been told to put the white plastic bag on top of the red Subaru. Cocaine had been taken from Johnson's person after his arrest. After Johnson was arrested, the police opened the white plastic bag the defendant had been carrying and found inside a pouch containing what appeared to be marijuana, a scale and a supply of plastic bags. A "pat-down search" of defendant produced apparent marijuana. Defendant was then arrested.

Johnson and Intihar were also arrested and they, along with the defendant, were placed in police cruisers. Two tow trucks were then ordered to tow the Camaro and Subaru from the scene. Prior to the vehicles being towed, the vehicles were inventoried.

Chipps took a seat on the driver's side of the Subaru to inventory the vehicle. He found a foil packet in plan view in an open cubby hole on the console of the Subaru. He knew from his experience that drugs were frequently packed in foil. The foil package contained two "window panes" of LSD.

Both Chipps and Eden testified the vehicle search was a standard Shaker Heights Police Department search of a lawfully impounded vehicle. A standard inventory form was completed and the search conducted according to departmental policy.

The trial court granted defendant's motion to suppress as to the inventory search for the reason that it was done with "investigatory intent". The motion was denied with respect to other evidence seized at the scene and state-

ments made by the defendant following his arrest. We find the vehicle search to be a lawful inventory search according to the dictates of *South Dakota v. Opperman* (1976), 428 U.S. 364, and its progeny.

The search can also be justified as a search contemporaneous with the defendant's arrest under the holdings in *Carroll v. United States* (1925), 267 U.S. 132, and *New York v. Belton* (1981), 453 U.S. 454. The defendant opened his car door and was about to enter prior to his arrest. The police had seized the suspected marijuana, scale and plastic bags. The fact that the search was conducted after defendant was secured in a police vehicle is immaterial, given the circumstances.

Therefore, the decision of the trial court suppressing the evidence found in this lawful vehicular search should be reversed.

STILLMAN, J., and WIEST, J., concur.

KRUPANSKY, P.J., concurs, with opinion.

Judge Saul G. Stillman, Retired, of the Eighth District Court of Appeals, and Judge Mark K. Wiest, of the Wayne County Common Pleas Court, sitting by assignment.

KRUPANSKY, P.J., concurring.

I concur with the majority opinion in the case *sub judice* and choose to write separately simply to clarify the facts and their impact on the findings of probable cause and reasonability of the police officer's search of the defendant's vehicle under the following two theories:

(1) as a legitimate search of the vehicle passenger compartment contemporaneous with the defendant's arrest pursuant to *Carroll v. United States* (1925), 267 U.S. 132 and *New York v. Belton* (1981), 453 U.S. 454;

(2) as a good faith application of Shaker Height's police inventory procedures pursuant to *South Dakota v. Opperman* (1976), 428 U.S. 364. The United States Supreme Court has long held that one has a lesser expectation of privacy in a motor vehicle because its function is transportation; seldom is it used as a residence or repository of personal effects and a vehicle travels where its occupants and contents are in plain view. *Cardwell v. Lewis* (1974), 417 U.S. 583, 590; *United States v Chadwick* (1977), 433 U.S. 1. In 1925, the United States Supreme Court decided the landmark case of *Carroll v.*

*United States* (1925), 267 U.S. 132, which held as follows:

"If a search and seizure without warrant are made upon probable cause, that is, upon the belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which, by law, is subject to seizure and destruction, the search and seizure are valid."

The Supreme Court has continued to carve exceptions to the fourth amendment warrant requirement in the case of automobiles in *Carroll* and its progeny for over fifty years.

A brief recap of the salient facts supports the conclusion the search of the red Subaru station wagon was reasonable within the confines of the fourth amendment. Detective Chipps, a member of the Shaker Height's Police Department strike force with eighteen years experience and over one hundred drug related arrests, had on many occasions witnessed drug transactions occurring in parking lots.

On April 7, 1989 the events in the parking lot transpired as follows:

(1) A gray Camaro pulled into the parking lot. A man got out, looked around and reentered the passenger's front seat of the Camaro.

(2) Defendant pulled into the parking lot in a red Subaru and went immediately to the gray Camaro.

(3) Defendant conversed with the two individuals in the gray Camaro.

(4) Defendant returned to his red Subaru, obtained a white plastic bag and returned to the 'gray Camaro.

(5) Defendant entered the gray Camaro and sat in the back seat. Motions and hands moving back and forth between the front and rear seat passengers were obvious.

(6) Defendant then exited the gray Camaro with the white plastic bag in his hand; when he reached the red Subaru, opened the vehicle's door and was about to enter, he was stopped by the police.

(7) At this point, defendant was detained and the white plastic bag placed on the top of the red Subaru.

(8) The police, upon approaching the gray Camaro, saw the man in the passenger seat attempt to conceal green vegetable matter, thought to be marijuana, in a clear plastic bag behind his seat in the vehicle. The passenger was arrested, patted down and cocaine was discovered on his person in the patdown.

(9) After the arrest of the passenger in the gray Camaro, the police opened the white plastic bag defendant had been carrying and inside discovered a gray vinyl or leather pouch which contained alleged marijuana, a scale and a supply of plastic bags.

(10) The patdown of defendant produced additional vegetable matter, alleged marijuana, on his person.

(11) At this point defendant was arrested.

(12) Detective Chipps sat in the driver's seat of the red Subaru to conduct an inventory of the vehicle and saw a foil packet in plain view in an open cubbyhole in the Subaru's console. Due to the detective's many years of experience in dealing with drug arrests, the officer knew drugs were often packaged in foil.

(13) The foil package contained two "window panes" of LSD.

The trial court held the arrest of defendant was valid and lawful. The remaining events justify the search of defendant's person and vehicle as "reasonable" and this conclusion follows inevitably as the night the day.

When the police approached the gray Camaro and saw the passenger attempt to conceal the marijuana, the police had probable cause to believe a crime had been committed and also had probable cause to believe all three individuals had participated in the commission of a crime. The passenger of the gray Camaro was arrested and on the patdown of his person, cocaine was discovered. The police now had probable cause to believe other drugs besides marijuana were involved.

The police at this point had probable cause to effect a lawful custodial arrest of defendant with a full search of his person including the white plastic bag which he was carrying and was under his control.

"[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Belton, supra* citing *United States v. Robinson* (1973), 414 U.S. 218, 235; accord *United States v. Frick* (1973) 490 F.2d 666.

Defendant's vehicle was an integral part of the criminal activity observed. Defendant carried the white bag to and from the red Subaru. A search of the white bag revealed a scale and baggies which could indicate defendant was trafficking in drugs, not merely pos-

sessing them. At this point it was reasonable and there was probable cause to believe the red Subaru contained more contraband. *Carroll* stands for the proposition that follows:

"If a search and seizure without warrant are made upon probable cause, that is, upon the belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which, by law, is subject to seizure and destruction, the search and seizure are valid." *Carroll, supra* at 132.

Defendant was standing at the vehicle with the door open ready to enter when detained. Defendant had been a recent occupant of his vehicle. It follows the police may examine the passenger compartment of the vehicle since it was within the reach of the arrestee. *Belton, supra* at 460; *Chimel, supra.*

The Supreme Court stated in *Belton* as follows:

"*** Accordingly we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. (Footnotes omitted.)

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. (Citations omitted.)

"***

"'Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like.***" *Belton, supra* at 460, 461 at fn. 4.

Forbidding the police officers to search the defendant's vehicle under the totality of the circumstances in the case *sub judice* would be ludicrous. When, as here, a police officer makes a lawful arrest of the occupant of an automobile, the passenger compartment may be examined along with the contents of any container found within. *Belton, supra.*

An argument may be made the defendant was not an occupant of the vehicle, however, he had the door of the vehicle open and his entrance was imminent. It was unnecessary for the police to wait until defendant entered the vehicle to justify its search. *Frick, supra.* Under

the circumstances it may have only complicated the situation allowing defendant to either effect an escape or use the vehicle as a weapon against the arresting officers causing injury or even death. Both officers in their testimony revealed they were extremely conscious of potential dangers that might arise if caution was not exercised.

In addition to the above theory justifying the search of defendant's vehicle, in *South Dakota v. Opperman* (1976), 428 U.S. 364, the United States Supreme Court recognized the validity of inventory searches "where the process is aimed at securing or protecting the car and its contents." *Id.* at 373. The Ohio Supreme Court held in *State v. Robinson* (1979), 58 Ohio St. 2d 478, 480, that the routine inventory search of an impounded automobile is *not* unreasonable unless it is a pretextual search."

The trial court's and defendant's reliance on *State v. Caponi* (1984), 12 Ohio St. 3d 302 at syllabus, for the proposition that the search of defendant's vehicle was "merely a pretext to continue an investigation" was misplaced. The facts in *Caponi* are not even remotely similar to those in the case *sub judice.* The defendant Caponi had been under surveillance by the police for several days having had a capias issued pursuant to his indictment for extortion. *Id.* On the day defendant was finally arrested, he had been kept under surveillance for several hours yet the police calculatedly waited until the defendant entered his vehicle and drove onto a public highway before they arrested him and conducted a warrantless search of the defendant's vehicle. *Id.* at 303. A gun was taken from the locked trunk of Caponi's vehicle and the extortion indictment was amended to include three firearm offenses. No connection was made between the extortion and the firearm offenses. The officers could have arrested Caponi on the capias without searching the vehicle.

In the case *sub judice* Detective Chipps testified tow trucks were called because the car's occupant was under arrest. He then conducted a search of the vehicle to protect the police against claims and inventoried the vehicle for any property of the owner when he found the foil packets with LSD. The search was not pretextual, for the police had recovered the bag with drug paraphernalia before impound of the vehicle and the resultant search. In addition, Detective Chipps testified that as soon as his backup, the uniformed cruisers, arrived at the scene the defendant was arrested while standing next to his red Subaru with the passenger door open. Both officers testified the search was a standard Shaker Heights Police Department search of a lawfully impounded vehicle. *Robinson, supra; State v. Rainey* (Feb. 19, 1987), Cuyahoga App. Nos. 51479, 51521, unreported. No contrary evidence was presented to conclude the search was pretextual.

The officers testified the inventory forms were furnished to them by the department and carried in their vehicles. They further testified the search was conducted pursuant to police department policies. No evidence was presented to rebut the officers' testimony or question their veracity. An examination of the inventory sheet reveals it was properly filled out. Furthermore, the testimony of Detective Chipps on cross-examination indicates as follows:

"Q. Was this car searched before it was taken to the police station?

"A. Yes, sir.

"Q. Even though you knew it was going to be taken to the police station?

"A. The issue is we inventory it on the street. It's part of our procedure. (Tr. 46, 47.)"

The fact is undeniable; the police did impound and tow the vehicle. The inventory procedure has a two-fold purpose, i.e., to protect the personal property of any party and to protect the police department. from unfair claims or dangerous items hidden in the property. In *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 742, the Court stated:

"In each case, the police were potentially responsible for property taken into their custody. By securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to police or others that may have been posed by the property."

The inventory of defendant's vehicle was routine conducted in accord with accepted police procedures and entirely justified based upon the valid arrest of defendant and impoundment of his vehicle.

Additionally, the arrest and search of defendant's vehicle was proper under the rationale of *Belton,* since the vehicle search was conducted "contemporaneous" to the defendant's arrest. *Belton* does not provide a bright line rule stating either how much time after arrest or distance from the person arrested is required

when contemporaneously searching a vehicle. *Belton* expands the meaning of *Chimel v. California* (1969), 395 U.S. 752, wherein it was held that a lawful custodial arrest creates a situation justifying the contemporaneous warrantless search of the arrestee and of the immediately surrounding area. *Belton, supra* at 771. Not only may the police search the passenger compartment of the car in such circumstances, they may 'examine the contents of any containers found therein. *Id.* Defendant's lawful arrest completely justifies the search of defendant's vehicle since defendant's lawful arrest justifies the infringement of any privacy interests defendant may have had at that point. *Id.*

It is interesting to note the United States Supreme Court has further expanded the propriety of vehicular searches by holding in *Michigan v. Long* (1983), 463 U.S. 1032, that a protective search of the passenger compartment of a car is valid even when the officer has merely only stopped a person during an investigative detention. The rationale of *Long* is clear. Police officers reasonably have the right to protect themselves and fellow officers from the unseen dangers a vehicle may hold by way of the possible presence of weapons hidden within. *Id.* at 1049. Roadside encounters between police and suspects are especially hazardous. *Id.* In the present case Detective Chipps testified he had safety concerns on his mind since he had "many times" found weapons on individuals during drug investigations.

The officers in the case *sub judice* were arresting three adult males who could have broken away at any time and quickly grasped any available weapon within the vehicle. These officers who were particularly vulnerable to harm should have reasonably been able to rely on the holdings of the Supreme Court to justify the passenger compartment search of defendant's vehicle. at 1052, 1053. Hence, under the *Belton* search incident to arrest theory, or the *inventory* search theory of *Opperman* and *Robinson,* the search of defendant's vehicle was proper.

Thus, considering the totality of the facts and circumstances the defendant's arrest and the subsequent search of his vehicle thereafter was "reasonable" pursuant to the fourth amendment and constitutionally permissible under either theory above stated.

Therefore, the decision of the trial court suppressing the evidence found in this lawful vehicular search was correctly reversed by the majority.