**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Lee JACKSON, Defendant-
Appellant.**

**No. 30939.**

United States Court of Appeals,
Fifth Circuit.
Sept. 8, 1971.

E. B. Peebles, Mobile, Ala. (Court-appointed), for defendant-appellant.

C. S. White-Spunner, Jr., U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before COLEMAN, SIMPSON, and RONEY, Circuit Judges.

COLEMAN, Circuit Judge:

The appellant, Edward Lee Jackson, was convicted on two counts of obstructing the United States Mails by taking letters before they had been delivered to the persons to whom they had been addressed, 18 U.S.C. § 1702. The jury acquitted him of one count and the prosecution voluntarily dismissed another. We affirm the convictions.

Jackson was arrested shortly after midnight of a Thursday by Sergeant

Simmons of the Mobile Police Department. He was charged with vagrancy pursuant to an investigation of a local offense, the forgery of a check. One Patricia Smith had implicated Jackson in that offense after she had sought to negotiate a check at the American National Bank. Jackson was docketed at the police department at 12:15 a. m., April 11, 1969. He was a city prisoner.

About noon on Friday, April 11, 1969, Sergeant Ogan of the Mobile City Police Department interviewed Jackson concerning the investigation of the forgery of the check. He testified that he read to appellant the *Miranda* [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694] warnings, that appellant declined to talk, and that the interview ended. According to Sergeant Ogan's responses to the Court's questions, there was no force used on appellant, no threats made, no promises made, no physical abuse, and no coercion used. No one else from the Mobile Police Department interrogated Jackson on Saturday, Sunday, or Monday, April 12–14, 1969. No statements of any kind were made to the city police during this period.

The appellant testified that the Mobile City Police interrogated him twice on Saturday and once on Monday before Postal Inspector Zollie Brown. He testified that they did not give him the *Miranda* warnings.

On Friday, April 11, 1969, W. J. Shaeffer, an investigative aide with the Post Office Department, was called by the Mobile City Police Department, and was informed that appellant was in their custody. Previously that day, Investigator Shaeffer had interviewed Patricia Smith. She had given him a statement which had implicated the appellant. Investigator Shaeffer went down to the Mobile City Police Department at 3:30 p. m. to interview Jackson. Shaeffer testified that he gave the *Miranda* warnings, that appellant declined to talk, and that he (Investigator Shaeffer) left immediately.

On Monday, April 14, 1969, Zollie Brown, a Postal Inspector, of eighteen and one half years experience was entering upon the investigation of an alleged mail theft by appellant, Edward Lee Jackson. He was accompanied by Investigator Shaeffer. He interviewed Jackson in the Detective Bureau of the Mobile City Police Department at 9:00 a. m. Inspector Brown testified that he identified himself to appellant, showing his credentials, and read the *Miranda* warnings to appellant. The appellant was shown Government Exhibits #1 (check in the amount of $52, dated March 6, 1969), #2 (five invoices of purchases on Bankamericard, signed by Wiley D. Wood, II), and #3 (check for $41, payable to Miss Barbara Word), and appellant made incriminating statements. The inspector testified that he did not threaten the appellant physically or psychologically, did not coerce or cajole him, and did not promise him immunity or reward. The appellant made the incriminating statements freely and voluntarily.

Brown showed appellant the check made payable to Edward Lee Jackson and purporting to be signed by Wood, Government Exhibit #1. The appellant then admitted to Inspector Brown that he had seen a letter with a stamp on it containing the blank Wood checks in the purse of Patricia Smith. He further stated that Patricia Smith completed the face of the check, making it payable to him, and that he had gone to the First National Bank of Mobile and cashed the check. Inspector Brown further testified that appellant said at that time that Patricia Smith had told him that she knew of a place where people did not get their mail, that they both went around there that night and that he took mail out of the mailbox. Jackson told the Inspector that the mail was a letter addressed to Wood containing a Bankamericard. Appellant told the Inspector that he used the Bankamericard and identified the five invoices, Government's Exhibit #2. Also, according to Inspector Brown, appellant fur-

ther stated to him that he had seen the Barbara J. Word check (Government Exhibit #3) in the possession of Patricia Smith, and that they participated jointly in cashing all the checks and using them for living expenses.

At the trial, appellant testified that everything Postal Inspector Brown testified to was true, except the appellant did deny that he took anything out of the mail. He claimed that Patricia Smith was the one who took mail out of the mailboxes.

After Inspector Brown left the jail he presented the case to the United States Attorney and a warrant promptly issued from the United States Commissioner. The United States Marshal had filed a detainer against Jackson, with the police department, on April 11. To further complicate Jackson's situation, he was rebooked on April 14 as a fugitive from justice in Mississippi.

On April 17, 1969, the Mobile City charge was nolle prossed. The appellant was released by Mobile to the Mississippi authorities pursuant to the fugitive charge. On April 17, the United States Marshal in Mobile forwarded his warrant to his counterpart in Jackson, Mississippi. That official then filed a detainer with the Sheriff in Pascagoula.

It is clear that although federal detainers were pending Jackson was never in the custody of federal authorities during the month of April.

On May 12, 1969, Jackson was indicted by the federal grand jury on the charges now before us. On May 14 a writ of habeas corpus ad prosequendum obtained his custody from Mississippi in order that he might be federally arraigned.

### 1.

*The Rejected Question on the Voir Dire*

Prior to the qualification of the jurors, counsel for appellant presented the Court with a written request that certain *voir dire* questions be asked of the potential jurors. After receiving this request, the Court asked various general questions of the potential jurors, but did not specifically ask any of the questions requested by counsel. After completing its questioning, the Court, addressing itself to counsel for the appellant, stated:

"Now, Mr. Peebles, I have examined the questions that you have suggested here and I think I have generally covered most of them, but if there is anything in particular you want to suggest to me, I want to hear it."

Whereupon, counsel for the appellant replied:

"Yes, sir, particularly, question No. 14, the last question."

In reply, the Court stated:

"No, I shan't ask that, because I will instruct them on that. Does the Government have anything?"

*Question No. 14, read as follows:*

"Are you more apt to believe the testimony of an official of the Post Office Department, solely because he is an official of the Post Office Department, than you are to believe the testimony of the Defendant?"

At the afternoon session the request that Question No. 14 be propounded was rejected for a second time.

It is now said that the refusal to ask Question No. 14 was so unfair as to constitute an abuse of discretion, that it effectively denied the appellant a reasonable opportunity to obtain an impartial jury, therefore error.

Rule 24(a) Federal Rules of Criminal Procedure provides:

"The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper."

Hence, as to the manner in which the *voir dire* is conducted the widest discretion necessarily is reposed in the Trial Judge. United States v. Fernandez-Piloto, 5 Cir., 1970, 426 F.2d 892, 893; Grogan v. United States, 5 Cir., 1968, 394 F.2d 287, 291, cert. denied, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968); Bellard v. United States, 5 Cir., 1966, 356 F.2d 437, 439, cert. denied, 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966). This broad discretion reposed in the Trial Judge is subject to the essential demands of fairness, Aldridge v. United States, 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931).

In questioning the prospective jurors, the Trial Judge asked if any venireman was a member, active and on duty, of a fire or police department of the state or any subdivision thereof, whether any were conscious of any personal bias or prejudice in any fashion or form in connection with the case, whether any was or recently had been engaged in law enforcement, either directly or indirectly, and whether any one of them knew of any reason why they could not be completely fair and impartial as a juror to the Government on the one side, and completely fair and impartial to the defendant on the other side. Also, the Judge, in refusing to ask the question now under consideration, stated that he would instruct the jury on the law. In a comprehensive charge to the jury, the Judge covered the recognized rules for weighing and evaluating the testimony of witnesses. Specifically, the judge charged that the jurors could consider the relationship a witness bears to the Government as affecting his credibility, and that the defendant's testimony was to be treated according to the same standards that apply to the testimony of other witnesses.

The appropriateness of an inquiry such as Question No. 14 to prospective jurors is indicated by dictum in Chavez v. United States, 10 Cir., 1958, 258 F.2d 816, 819, cert. denied, 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed.2d 577, where the Court stated that "a defendant cannot be fairly tried by a juror who would be inclined to give unqualified credence to a law enforcement officer simply because he is an officer. When it is anticipated that law enforcement officers may testify in a cause it is a proper subject of *voir dire* juror examination to inquire relative to the attitude of prospective jurors toward law enforcement officers".

Later, the District of Columbia Circuit, over a dissent and then a reluctant acquiescence, held that a refusal to give the instruction is reversible error where the testimony from law enforcement officers is virtually the entire case for the prosecution, Sellers v. United States, 1959, 106 U.S.App.D.C. 209, 271 F.2d 475; Brown v. United States, 1964, 119 U.S.App.D.C. 203, 338 F.2d 543, 544, 545. In the latter case, however, the principal opinion observed, page 545, that "failure to make appropriate inquiry, when requested, does not necessarily require reversal; the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole". The First Circuit, in Gorin v. United States, 1 Cir., 1963, 313 F.2d 641, 647, cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052, held that the failure to ask the question along with others did not amount to an abuse of discretion because the Court's general questions coupled with its charge afforded the appellants ample protection. Also, in a footnote to the case of Belmarez v. United States, 5 Cir., 1966, 362 F.2d 544, this Court stated that the District Court might well have allowed a question requested in proper form, such as that approved in *Sellers*, whether any of the jurors would be inclined to give more weight to the testimony of a police officer, merely because he is a police officer, than any other witness.

█ We hold that the failure to propound Question No. 14 was not error. As a matter of fact, the question, as framed, amounts to an ingenious effort to commit a juror in advance as to how he will handle credibility choices be-

tween *a government official and the defendant,* before either of them takes the witness stand. The real essence of the question was, "Would you be more apt to believe an official than the defendant?" The question in *Sellers, supra* was whether "any of the jurors [are] inclined to give more weight to the testimony of a police officer merely because he is a police officer than any other witness in the case?" [1]

Moreover, any possible harm from the failure to ask the question was totally cured by the instructions of the Court, the last thing the jurors heard before they retired to consider their verdict.

## 2.

### *The McNabb Issue*

Appellant, relying on McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L. Ed. 100 (1948); Rule 5(a) Federal Rules of Criminal Procedure, 18 U.S.C. A.; Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); and Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943), says that his arrest by the Mobile City Police Department was at the instance and inducement of the federal authorities, and that the failure of the federal authorities to take him forthwith before the United States Commissioner invalidated, under Rule 5(a), any admissions made by him while held by the Mobile City Police Department. In other words, the second question presented by this appeal is whether, under the *McNabb-Mallory Rule* the admissions by the appellant should have been allowed in evidence. This Court has expressed its understanding of the *McNabb-Mallory Rule* as to abolish unlawful detention by, and at the instance of, federal officers and to require observance of Rule 5(a) of the Federal Rules of Criminal Procedure.

Rule 5(a) of the Federal Rules of Criminal Procedure requires federal officers to take an arrested person before a United States Commissioner without unnecessary delay. The Supreme Court, in applying that rule, has made it abundantly clear that if an arrested person makes an incriminating statement or gives a confession after an arresting officer has failed to comply with Rule 5(a) the statement or confession is not admissible in evidence against the accused. This result obtains without regard to the voluntariness of the statement.

The threshold question is whether the federal authorities had the custody and control of the appellant. Without detention by or at the instance of federal authorities Rule 5(a) is not applicable.

The appellant was arrested by city authorities and was held by them. However, the appellant urges that because of the close cooperation between the Mobile City Police Department and the United States Postal Inspectors his custody *should have been considered as federal*

---

1. In Brown v. United States, 1964, 119 U.S.App.D.C. 203, 338 F.2d 543, 544, the D. C. Circuit again affirmed its rule as to the question: "Would you give greater credence to the testimony of a law enforcement officer merely because he is an officer as compared to *any other witness*". (emphasis ours).

In United States v. Gore, 4 Cir., 1970, 435 F.2d 1110, the Fourth Circuit reversed for failure to inquire "Whether racial prejudice would prevent any juror from giving a fair and impartial verdict because the defendant was a Negro charged with the murder of a white policeman".

For the reasons stated in the opinion, the Court held that no error had been committed for failure to propound the following question: "Does any member of the jury believe that the testimony of a policeman should be afforded greater credence than the defendant merely because he is a police officer?"

See also, Ross v. United States, 8 Cir., 1967, 374 F.2d 97 [opinion by J. Blackmun] where one question sought to be propounded was: "Whether the testimony of a government investigator is entitled to more weight than the testimony of any other witness". Refusal not error. The case involved forging the name of a deceased person to Social Security checks. Cert. denied, 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967).

*at all times.* The *McNabb-Mallory Rule* thus applied, he says, to exclude all the fruits of the federal interrogation conducted after the reasonable period following arrest. Similar arguments have been frequently made in this Circuit but with almost uniform lack of success. Barnes v. United States, 5 Cir., 1967, 374 F.2d 126; Lovelace v. United States, 5 Cir., 1966, 357 F.2d 306; Papworth v. United States, 5 Cir., 1958, 256 F.2d 125, cert. denied, 358 U.S. 854, 79 S.Ct. 85, 3 L.Ed.2d 88 (1958); Brown v. United States, 5 Cir., 1955, 228 F.2d 286, cert. denied, 351 U.S. 986, 76 S.Ct. 1055, 100 L.Ed. 1500; White v. United States, 5 Cir., 1952, 200 F.2d 509, cert. denied, 345 U.S. 999, 73 S.Ct. 1142, 97 L.Ed. 1405. Those attempts all sought to exercise the vitality of Anderson v. United States, *supra,* decided the same day as McNabb v. United States, *supra. Anderson* placed within the prohibition of the *McNabb-Mallory Rule* those proven situations of collusion between state and federal authorities for the purpose of circumventing Rule 5(a) and the *McNabb-Mallory Rule.*

The burden of proving a working arrangement as condemned by the Anderson case rested on the appellant. In United States v. Coppola, 2 Cir., 1960, 281 F.2d 340, 344, 345, affirmed 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79 (1961), the Second Circuit spelled out the burden of proof a defendant (appellant) must meet to establish an unlawful collaboration between state and federal authorities so as to exclude resulting confessions under the *Anderson* rule:

"However, to bring a case within this rule there must be facts as there were in Anderson, not mere suspicion or conjecture. Here, as in United States v. Abel, 2 Cir., 1958, 258 F.2d 485, 494, affirmed, 1960, 362 U.S. 217, 226–230, 80 S.Ct. 683, 4 L.Ed.2d 668, rehearing denied, 1960, (362 U.S. 984), 80 S.Ct. 1056, (4 L.Ed.2d 1019), there is no basis on which this court can properly reverse the conclusion of the district judge. The Supreme Court's decision in that case makes plain that the mere fact that two or more agencies have the same crime or the same suspects on their books and that they are cooperating to achieve a solution does not make one the agent of the other and thus responsible for the other's acts.

"In the absence of any evidence of collaboration to achieve an unlawful end, we would not be warranted in creating a rule whereby prior cooperation of state and federal officials in the investigation of crime would prohibit the admission of uncoerced confessions made during a detention by state officers which the Federal officials did not induce and were powerless to prevent."

We have heretofore passed on this question of whether federal custody existed. In White v. United States, supra, involving burglary of a United States Post Office, questioning was done by a postal inspector during several days of confinement in the city jail without a warrant and without commitment. In that case, we said:

"Before the question is reached of whether there was unnecessary delay in taking the defendant before a United States Commissioner, it must first be determined that a federal officer, here Mr. Schubert the Post Office Inspector, had the custody and control of the defendant. The Birmingham City Detectives showed a very high degree of cooperation with and assistance to the Post Office Inspector. Both Mr. Jones and Mr. Schubert testified orally and the inferences and conclusions to be drawn from their testimony [as evidence] so far as the same relate to the admissibility of this evidence were primarily for the District Judge. He had the advantage of seeing and hearing the witnesses. If he believed their testimony to the effect that the defendant was being held under a state charge of burglary

and grand larceny on instructions from the Detective Bureau of the City of Birmingham, and that his custody was not turned over to the federal officer until shortly prior to the time that he was carried before the United States Commissioner, then the evidence would not be inadmissible under the McNabb Rule."

In the instant case, no witness, including the appellant, testified that Jackson was being held by the Mobile City Police Department at the request of federal authorities. On the contrary, the undisputed testimony was that the appellant was booked on vagrancy charges pursuant to an investigation of a local charge, the forgery of a check. On April 14, 1969, he was rebooked on a state fugitive charge. The end of that day was the first time a federal complaint was lodged against him. He was not questioned thereafter. Mobile released him to another state, not to federal authorities.

There is adequate support for the finding by the District Court that the arrest was made by city officers without inducement or request by the federal authorities, that the detention of the appellant was state detention, not federal detention.

The Sixth Circuit in United States v. Sailer, 6 Cir., 1962, 309 F.2d 541, 542, cert. denied, 374 U.S. 835, 83 S.Ct. 1884, 10 L.Ed.2d 1057 (1963), said:

"The McNabb rule prohibits the use in criminal trial of confessions obtained during illegal detention of a defendant, whether or not the confession is the result of torture, physical or mental. The illegal aspect of the detention must be the failure to bring the charged person before a committing magistrate without unnecessary delay. Rule (5) Federal Rules of Criminal Procedure. See Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100. Not only must the legality of the detention be challenged under Rule 5(a) for McNabb to apply,

but it must also appear that the detention was 'by or at the instance of federal officers.' White v. United States, 5 Cir., 200 F.2d 509, cert. denied, 345 U.S. 999, 73 S.Ct. 1142, 97 L.Ed. 1405. See discussion in Stephenson v. United States, 257 F.2d 175 (C.A. 6). * * * No 'working arrangement' on this occasion or customary practice concerning same is shown. It results that appellant has not sustained his burden of proving a violation of Rule 5(a), Federal Rules of Criminal Procedure. United States v. Leviton, 193 F.2d 848, 854, C.A. 2, cert. denied 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350."

The Tenth Circuit in Swift v. United States, 10 Cir., 1963, 314 F.2d 860, 862, concluded similarly:

"Rule 5(a), which requires that a person who is arrested be taken before a commissioner without unnecessary delay, is invoked only when an officer makes an arrest under federal law. It has no application in this instance since the record here is clear that, at the time the statement was made by Swift, he had been arrested on a state charge, and was in the sole custody of state officers.

This Court opined in Brown v. United States, *supra*: "The McNabb Rule is inapplicable when the unlawful detention is by State officers not acting in collaboration with federal officers."

In summary, we hold that Rule 5(a) of the Federal Rules of Criminal Procedure requiring an arrested person to be taken without unnecessary delay before a committing magistrate has no application to one arrested on a state charge and in the custody of state officers. Therefore, because of the failure of the appellant to prove unlawful collusion between the state and federal authorities, the Trial Court properly admitted appellant's confession into evidence without violating Rule 5(a) of the Federal Rules of Criminal Procedure and the *McNabb-Mallory Rule*.

## 546

### 3.

#### The Miranda-Westover Argument

We turn now to a disposition of the third issue presented. Here some of the facts are in dispute: The appellant said that he had been interrogated by the Mobile City Police Department shortly after being booked, later in the morning on which he was booked, and two days after he was booked. He further testified that at no time was he ever advised of his constitutional rights by the police officers of the City of Mobile who had interrogated him. On the other hand, according to the Mobile City Police Officer, the appellant was questioned by his department once on Friday, April 11, 1969, at about noon, at which time appellant was read the *Miranda* warnings, declined to talk, and was immediately left alone. The officer testified that for two days thereafter, Saturday and Sunday, the appellant was not questioned.

Early in the trial, the Judge, in accordance with Jackson v. Denno, 378 U. S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963), conducted a hearing out of the presence of the jury to determine the voluntariness of the incriminating statements and their admissibility into evidence in light of *Miranda*. Following the *voir dire* hearing and based upon the Supreme Court's decision in Miranda v. Arizona, *supra,* and this Court's opinion in United States v. Green, 5 Cir., 1970, 433 F.2d 946, the lower court made a finding that the warnings given to the appellant comported with the constitutional standards established by *Miranda*, that the appellant had waived his rights voluntarily, knowingly, and intelligently, and that the incriminating statements were therefore admissible.

We perceive no error on this point, see Jennings v. United States, 5 Cir., 1968, 391 F.2d 512.

Appellant's contentions as to the arguments to the jury are of no merit.

The judgment of the District Court is Affirmed.