Roland SANDIDGE, Plaintiff-Appellee,

v.

**SALEN OFFSHORE DRILLING COMPANY, Defendant,**

**Salen Protexa Drilling Company, Defendant-Appellant.**

No. 84–2303.
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 1, 1985.

---

254

Clann & Pearson, Susan R. Abrams, Houston, Tex., for defendant-appellant.

Edwards, Perry, McMains & Constant, Russell H. McMains, Corpus Christi, Tex., for plaintiff-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

In this appeal, we must determine whether the district court erred in not permitting the defendant-appellant's counsel to ask during voir dire if the prospective jurors would give more weight to a videotaped deposition over a written deposition; whether the court's comments regarding the videotaped deposition constituted an abuse of discretion; and whether the court's instructions on aggravation constituted reversible error as involving an impermissible comment on an ultimate issue of fact. Resolving each of these issues in favor of the plaintiff-appellee, we affirm.

I.

On December 28, 1980, Ronald Sandidge sustained multiple fractures to his mid-back area while employed by Salen Offshore Drilling Company (Salen Offshore). In February 1981, he returned to work in the employ of Salen Protexa Drilling Company (Salen Protexa) as a floorhand-roustabout aboard the rig Salen Energy 4 (formerly Nahautl). The rig was owned and operated by Salen Protexa. On March 10, 1981, Sandidge was struck in the back by an air-powered spinning wrench. Following the second accident, which involved an injury to the same mid-back area that had been injured in the December 1980 accident, Sandidge continued to work for Salen Protexa until August 1982. He received medical treatment as a result of both the December 1980 and March 1981 accidents. He presently suffers pain that allegedly prevents him from returning to his former work.

On March 14, 1983, Sandidge filed this lawsuit under the Jones Act, 46 U.S.C. § 688, and the general maritime law against both Salen Protexa and Salen Offshore, seeking damages for the personal injuries he sustained in the December 1980 and March 1981 accidents. Discovery proceeded space until, on April 16, 1984, the morning of jury selection, Salen Offshore settled with Sandidge. Sandidge's claim against Salen Protexa then proceeded to trial with the jury returning a verdict for

Sandidge on April 18, 1984. The district court entered an order entitled "Final Judgment" on April 23 and Salen Protexa filed its notice of appeal on May 21. Thereafter, on June 4, 1984, the district court dismissed Sandidge's claim against Salen Offshore with prejudice.

On appeal, Salen Protexa contends that (1) the district court erred in not permitting Salen Protexa's counsel to inquire during voir dire whether the prospective jurors would give more weight to a videotaped deposition than to a written deposition; (2) the court abused its discretion in commenting on the modes of presenting deposition testimony; and (3) the court committed reversible error by commenting on an ultimate issue of fact when instructing the jury.

## II.

■ Preliminarily we must consider on our own motion whether we have appellate jurisdiction. On May 21, Salen Protexa filed its notice of appeal from the April 23 judgment—a judgment that only disposed of Sandidge's claim against Salen Protexa. Although Sandidge had previously settled his claim with Salen Offshore, that claim was not dismissed from the case until June 4, after Salen Protexa filed its notice of appeal. Hence, regardless of the district court's nomenclature, the April 23 judgment did not constitute a final judgment at the time it was entered since Sandidge's claim against Salen Offshore was then still pending. *See* Fed.R.Civ.P. 54(b). Moreover, Salen Protexa did not obtain a Rule 54(b) certificate that would have permitted it to take an appeal from the April 23 judgment. Nevertheless, we have consistently held that there is an exception to the requirements of Rule 54(b) that allows the separate appeal of a nonfinal judgment where a subsequent judgment of the district court effectively terminates the litigation. *See Alcorn County v. U.S. Interstate Supplies,* 731 F.2d 1160, 1166 (5th

Cir.1984); *Mesa Petroleum Co. v. Coniglio,* 629 F.2d 1022, 1029 n. 7 (5th Cir.1980); *Tower v. Moss,* 625 F.2d 1161, 1164–65 (5th Cir.1980); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir.1973); *see also Cape May Greene, Inc. v. Warren,* 698 F.2d 179, 184–85 (3d Cir. 1983); *Martin v. Campbell,* 692 F.2d 112, 114 (11th Cir.1982); *Pireno v. New York State Chiropractic Association* 650 F.2d 387, 389–90 n. 4 (2d Cir.1981), *aff'd sub nom. Union Labor Life Insurance Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); *Anderson v. Allstate Insurance Co.,* 630 F.2d 677, 680–81 (9th Cir.1980). In *Jetco,* the district court dismissed the action as to one of three defendants, who then filed a premature notice of appeal, and several months later the court entered an agreed judgment as to the remaining defendants. We gave effect to the notice of appeal as of the date of the agreed judgment, heeding the admonition of *Gillespie v. U.S. Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 310, 13 L.Ed.2d 199 (1964), that "practical, not technical considerations are to govern the application of principles of finality."

■ In the instant case, we do not confront any of the specific prohibitions against giving effect to premature notices of appeal that are enumerated in Fed.R. App.P. 4(a)(4).[1] *Alcorn County,* 731 F.2d at 1166. "[T]here is no danger of piecemeal appeal confronting us if we find jurisdiction here, for nothing else remains in the federal courts." *Anderson,* 630 F.2d at 681. Hence, because the June 4 dismissal of Salen Offshore, when viewed in conjunction with the April 23 judgment against Salen Protexa, effectively terminated this litigation, we find that we have appellate jurisdiction. Accordingly, we turn to the merits of the appeal.

## III.

During the voir dire examination, which was conducted by counsel, Sandidge's at-

---

**1.** Hence, *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), holding that a notice of appeal filed

before disposition of a post-trial motion under Fed.R.Civ.P. 59 was a nullity, is not applicable to the instant case.

torney asked if any of the jurors felt they could not pay attention to evidence presented by videotape rather than by live testimony. The court allowed the question. During the voir dire by Salen Protexa's counsel, the following exchange occurred:

> COUNSEL: [Sandidge's counsel] asked you if any of you had a problem with regard to a video deposition of the doctor. We will also be reading a deposition of an independent medical exam done by Dr. Greg Hanson....
>
> ....
>
> COUNSEL: What I want to ask about that, *whether anyone on this jury panel would give any more weight to the evidence presented by video deposition which is basically live deposition of a doctor, versus the written transcript or deposition that was taken out of court.* Is there anyone that feels the video is more substantial or consequential.
>
> THE COURT: You can't ask the jury to give weight to it. *It is up to the jury to give how much weight to the testimony they want to give.* You can't ask what weight they will give. They don't know. They haven't heard either one, so they really can't answer your questions.
>
> Jurors, let me explain something to you. Normally testimony comes to you in two forms in these trials. It comes in the forms of witnesses' testimony, that is, answers to questions that the lawyers ask witnesses on the witness stand and the answer the witnesses give under oath to the question to the lawyer is the evidence in the case for which you will decide[ ] whatever issues are submitted to you, whatever controversies are submitted to you for your decision. That's one form of evidence. It is ideal for it to be presented to you from the witness stand, where there are disputes, that's where one witness says one thing, another witness is saying something else or is saying the opposite. You have to figure out which witness is right, which witness is wrong, which one is being truthful and which one's not being truthful or which is correct and which is mistaken. *So, obviously, when you sit and observe the witness and listen to the witness' testimony it enables you to better perform this function.* Sometimes a witness cannot be questioned until a deposition is taken and the deposition is taken much like testimony is given in a courtroom. That is, lawyers from both sides in turn ask the witness questions. The witness answers the questions and there is a video camera trained on the witness and you see him and observe him as you would someone talking on television. Here again, you have an opportunity to observe the witness' mannerisms and his demeanor as he testifies whether or not he delays in his answers or whatever. Sometimes neither of those systems for whatever reasons, neither of those systems are available, so you have what we call a written deposition. While the witness is orally asked questions by the lawyer, then those questions are transcribed in the form of a little book and then questions and answers are read to the jury in the courtroom. *This is not an ideal way to present testimony because you jurors are not able to judge the witness by observing him as he speaks,* but it is certainly better than being deprived of the testimony completely. So, you as jurors will have to do the best you can with the situation you are faced with. *You decide of how much you heard, what credible evidence is and what the believable evidence is.* So, it's handled this way because it's the best way it can be done under the circumstances. *You are entitled, jurors, to give all the testimony or any part of the testimony whatever weight you think it's entitled to.* Right now you can't be asked what you believe—what you would believe and what you wouldn't believe, because you don't know. But, that's basically the way it is done. I think that's what counsel is trying to say. It may be presented in different forms. You will just have to pass judgment on it as best you can.
>
> Is that clear to everybody now?

Record Vol. III at 26–29 (emphasis added).

Salen Protexa argues that the court's action in not allowing its question regard-

ing the videotaped deposition, and in permitting Sandidge's, established a prejudicial double standard which was exacerbated by the court's statements concerning the credibility and weight to be attributed to the depositions. Salen Protexa contends that its "questioning of potential jurors was not as to what weight they would give to one particular witness as opposed to another, rather it was directed to the credibility of the two classes of testimony, written and video depositions." Appellant's Brief at 6. Salen Protexa insists that the court's comments indicated to the jurors the amount of credibility they should give to the two types of testimony and, as such, were clearly prejudicial. Hence, Salen Protexa concludes, the court's actions did not meet the essential demands of fairness.

Not unexpectedly, Sandidge offers an altogether different view of the exchange, arguing that the trial judge merely prevented Salen Protexa's counsel from attempting to commit the jury in advance to give weight to testimony that had not yet been presented and that the judge instructed the jury accordingly. Further, Sandidge states that the court's comments merely reflect the oft-repeated, common-sense notion that greater deference is due credibility determinations by factfinders who have been able to observe the demeanor of a witness giving testimony.

■ Before addressing the parties' contentions, we note that Salen Protexa bears a difficult burden on its claim of error regarding the court's actions and comments during voir dire. First, rulings on the scope of voir dire are committed to the discretion of the trial court and the failure to permit certain questions is not grounds for reversal absent a showing of error and prejudice. *See Keyes v. Lauga*, 635 F.2d 330, 333 (5th Cir.1981); *see also DeLaCruz v. Atchison, Topeka & Santa Fe Railway Co.*, 405 F.2d 459, 462 (5th

Cir.1968), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1749, 23 L.Ed.2d 221 (1969). Second, because Salen Protexa failed to object to the trial court's allegedly erroneous comments, we must consider its contentions on appeal under the plain error standard. *See Peel v. American Fidelity Assurance Co.*, 680 F.2d 374, 377 (5th Cir.1982).[2] "Reversal is not required under that standard unless there has been a miscarriage of justice." *Morreale v. Downing*, 630 F.2d 286, 290 (5th Cir.1980).

■ The district court did not abuse its discretion in disallowing Salen Protexa's question. Salen Protexa's counsel expressly asked whether anyone on the jury panel would give more weight to evidence presented by videotaped deposition than to that presented by a written deposition. In not allowing the question, it must have been the court's view that the question in effect asked the jury how it would weigh evidence it had not heard. Clearly, this would not be a proper line of inquiry.

We have held in a personal injury case that the trial court was not required to put to prospective jurors on voir dire questions as to whether they would be impressed by certain types of testimony on damages. *DeLaCruz*, 405 F.2d at 462. In *United States v. Jackson*, 448 F.2d 539, 542–43 (5th Cir.1971), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 750, 30 L.Ed.2d 775 (1972), a criminal case, we held that the trial court did not abuse its discretion by refusing to ask the jurors on voir dire if they were more apt to believe the testimony of a police officer solely because he was a police officer than they were the defendant, observing: "As a matter of fact, the question, as framed, amounts to an ingenious effort to commit a juror in advance as to how he will handle credibility choices between *a government official and the defendant*, before either of them takes the witness stand." *Id.* at 542–43 (emphasis in original).[3] *See also*

---

2. 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2472 (1971); 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 46.02 n. 8 (1984); *see also Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot*

*Home Builder, Inc.*, 704 F.2d 822, 828 (5th Cir. 1983).

3. Distinguishing the question posed in *Sellers v. United States*, 271 F.2d 475 (D.C.Cir.1959), *see infra* note 5, we stated: "The real essence of the

*United States v. Caggiano,* 667 F.2d 1176, 1178 (5th Cir.1982); *United States v. Gassaway,* 456 F.2d 624, 626 (5th Cir.1972); *United States v. Vadino,* 680 F.2d 1329, 1336–37 (11th Cir.1982) (following Fifth Circuit rule established in *Jackson* and *Gassaway* ), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983); *Ross v. United States,* 374 F.2d 97 (8th Cir.) (not error for court to refuse to ask venirepersons whether testimony of government investigator was entitled to more weight than testimony of any other witness) (Blackmun, J.), *cert. denied,* 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967).

In *Hinkle v. Hampton,* 388 F.2d 141 (10th Cir.1968), the Tenth Circuit held that the trial court properly refused to permit the plaintiff in an automobile accident case to question a jury panel on voir dire as to whether members of the panel had the same confidence in osteopathic physicians and medical doctors and would give equal credence to a member of either profession who testified as a witness. Acknowledging the impropriety of questioning jurors as to the weight they would give the testimony of one particular witness as opposed to another, the plaintiff in *Hinkle* contended that the question he posed probed whether equal credence, not weight, would be given to classes of witnesses. The court rejected this contention, reasoning that the plaintiff's question sought a commitment in advance that the jurors would give "equal credence" to the witnesses regardless of factors other than their profession. Thus, the "[p]laintiff's question, if followed out, could have restricted the jury's deliberations," and the trial court properly refused it. *Id.* at 143.

Likewise, in the case at bar, it could be said that Salen Protexa's question whether the jurors would give more weight to a videotaped deposition than a written deposition sought a commitment in advance as to the amount of credit they would give to that class of evidence. The thrust of the question did not further the purpose of voir dire—i.e., discerning bias or prejudice in prospective jurors [4]—and the district court was well within its discretion in not allowing it.

█ Nor did the court set a double standard in allowing Sandidge's question and refusing Salen Protexa's. The principle distinguishing proper from improper inquiry on voir dire is that examination cannot search the result of a case in advance. *See Hinkle v. Hampton,* 388 F.2d at 143 (quoting *Chavez v. United States,* 258 F.2d 816, 819 (10th Cir.1958), *cert. denied,* 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed.2d 577 (1959)). This principle informed the *Hinkle* court's explanation that "[h]ad the question been whether the jurors would have credited a medical doctor over an osteopath simply because he was a medical doctor, or if it had been an inquiry whether the jurors would discount the testimony of an osteopath simply because he was an osteopath, the *Sellers* principle [holding that a question directed to the credibility of two classes of witnesses was proper] would be pertinent." [5]  388 F.2d at 143. In the instant case, Sandidge's inquiry was simply directed at whether the jurors would pay attention to videotaped testimony or would harbor prejudice against the party presenting it. Hence, the query furthered the voir dire's traditional function of discerning bias or prejudice in prospective jurors and did

---

question [at issue in *Jackson* ] was, 'Would you be more apt to believe an official than the defendant?' " *United States v. Jackson,* 448 F.2d at 543.

4. *See generally* Annot., 99 A.L.R.2d 7 (1965 & Supp.1984).

5. *Sellers v. United States,* 271 F.2d 475 (D.C.Cir. 1959). The *Sellers* court held that the trial court abused its discretion in refusing to ask the jury whether any of the jurors were inclined to give

more weight to the testimony of a police officer merely because he was a police officer than other witnesses in the case. *Contra United States v. Jackson, supra,* and its progeny; *Chavez v. United States,* 258 F.2d 816 (10th Cir. 1958), *cert. denied,* 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed.2d 577 (1959) (holding that the trial court did not err by refusing to ask whether prospective jurors would place a greater amount of weight upon the testimony of law enforcement officers over that of the defendants).

not seek to elicit a pledge from the jurors as to the amount of credit they would give certain evidence. In contrast, Salen Protexa's question expressly asked whether the jurors would give more weight to a videotaped deposition than to a written deposition, thereby impermissibly searching the result of the case in advance. Like the *Hinkle* court, we could possibly formulate a permissible question that presumably would have attained Salen Protexa's objective in posing its question during voir dire, but such is not our task. *But see United States v. Jackson,* 448 F.2d at 542–43. It is enough to state here that Salen Protexa's question, if followed out, could have restricted the jury's deliberations. Therefore, the district court did not abuse its discretion in disallowing it.

■ A trial court may not properly instruct a jury that a written deposition is entitled to less weight than live testimony. *See Wright Root Beer Co. v. Dr. Pepper Co.,* 414 F.2d 887, 889–90 (5th Cir.1969); *see also In re Air Crash Disaster,* 635 F.2d 67, 87 (2d Cir.1980) (Mansfield, J., dissenting); 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2146, at 458 (1971) ("Though live testimony is preferred, depositions, when admissible, are not to be treated as a form of second-class evidence."). By analogy, it is not proper for a trial court to instruct a jury that a written deposition is entitled to less weight than a videotaped deposition.

Salen Protexa contends that the district court did just this by telling the jury panel that the testimony from a witness by videotape was substantially better than testimony by written deposition. This contention mischaracterizes the nature of the court's comments regarding the depositions. The court merely suggested that it was more difficult to determine how much weight to accord written testimony, not that it was entitled to less weight.[6] Moreover, both in its comments to the jurors during voir dire and in its charge to the jury after trial, the district court explicitly stated that it was

---

**6.** Courts often refer to the factfinder's unique advantage in evaluating evidence which comes from observing the demeanor of witnesses appearing in court. *See, e.g., Onaway Transp. Co. v. Offshore Tugs, Inc.,* 695 F.2d 197 (5th Cir. 1983); *Caradelis v. Refineria Panama, S.A.,* 384 F.2d 589 (5th Cir.1967). Appellate courts are prone to give greater deference to the findings of fact of a district court that has had the opportunity to observe a witness give his testimony. *See Onaway Transp. Co.,* 695 F.2d at 200. In his comments during voir dire, the district judge was not suggesting, however, that the jurors should prefer, in the sense of assigning weight, the videotaped evidence over the evidence presented by written deposition. Instead, the court was merely intimating that the jurors could more easily assign weight and make credibility choices given evidence that allowed them to observe the demeanor of the witnesses. In *United States v. Tunnell,* 667 F.2d 1182 (5th Cir.1982), we observed of a videotaped deposition:

> The videotape made it possible for the trial court to gauge [the witness'] attitude more accurately than would have been possible with just a cold deposition record. This is a very persuasive argument for the use of videotape depositions in lieu of the traditional transcriptions. The trial judge was able to note [the witness'] attitude reflected by his motions, facial expressions, demeanor, and voice inflections.

*Id.* at 1188. This has been the constant refrain of courts and commentators discussing the advantages of videotaped depositions. *See, e.g., Lamb v. Globe Seaways, Inc.,* 516 F.2d 1352, 1357 n. 3 (2d Cir.1975) (Oakes, J., dissenting); *Westmoreland v. CBS, Inc.,* 584 F.Supp. 1206, 1212 (D.D.C.1984); *In re Application of American Broadcasting Cos.,* 537 F.Supp. 1168, 1171 n. 10 (D.D.C.1982); *Continental Fed. Sav. & Loan Ass'n v. Delta Corp. of America,* 71 F.R.D. 697, 702 (W.D.Okla.1976); *In re Daniels,* 69 F.R.D. 579, 581 (N.D.Ga.1975); *Carson v. Burlington Northern, Inc.,* 52 F.R.D. 492, 493 (D.Neb.1971); *Mark IV Properties, Inc. v. Club Dev. & Management Corp.,* 12 B.R. 854, 860 (Bankr.S.D.Cal. 1981); M. Belli, Modern Trials § 59.1 (2d ed. 1982); 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 1001(2)[03] (1982); 3 J. Wigmore, Evidence § 809 (1970); 8 C. Wright & A. Miller, *supra,* § 2115 (Supp.1984); Boudreaux, *Is it Time for Texas to Amend Rule 215c to Adopt Guidelines for Taking Videotape Depositions?,* 24 S.Tex.L.J. 225, 226–27 (1983); Kornblum & Short, *Use of Videotape in Civil Trial Preparation and Discovery,* 23 Am.Jur. Trials 95 (1976); Murray, *Videotaped Depositions: Putting Absent Witnesses in Court,* 68 A.B.A.J. 1402 (1982); Comment, *Videotape Depositions: An Analysis of Use in Civil Cases,* 9 Cum.L.Rev. 195, 197, 221 (1978). Further, these views are compatible with the reasons underlying the established preference of the federal rules for live testimony. *See* 8 C. Wright & A. Miller, *supra,* § 2142.

the jury's responsibility to determine how much weight should be given to the testimony. Clearly, the district court's unobjected-to comments, when reviewed in context, do not amount to fundamental error resulting in a miscarriage of justice.

## IV.

One of Salen Protexa's defenses at trial was that the March 1981 accident did nothing more than temporarily aggravate the injury Sandidge sustained in December 1980 while in the employ of Salen Offshore. The evidence at trial showed that Sandidge returned to work in February 1981, after the first accident, although he continued to suffer pain and was under pain medication. After the March 1981 accident, Sandidge again returned to work, even performing a one-week hitch as a roustabout, but he continued to suffer pain. He later switched to less strenuous duty but nonetheless worked on the rig through at least July 1982.

Salen Protexa asserts that the district court improperly instructed the jury on the aggravation issue by reaching beyond the evidence presented at trial to comment upon an ultimate issue of fact.

The trial judge instructed the jury that Sandidge would be entitled to recover against Salen Protexa if the jury found that Salen Protexa caused him injury that aggravated a pre-existing condition. He illustrated his instruction as follows:

Let's say at the time of the injury Mr. Sandidge was suffering pain, but he wasn't disabled. He could work despite his pain but after the injury and because of it he couldn't work any more. *Let's just suppose—forget this case for a moment.* Let's say you have a case where a person has an injury and as a result of that injury he suffers pain but he works and is able to work. Then he has another accident and as a result of that accident, he still suffers pain, the same pain he had before and let's say the proof in that case showed that irrespective of the second injury he would have had pain anyway, the same amount of pain, but

now he is also disabled. Now he is disabled because of the second injury when superimposed on the first injury rendered him disabled.

Then, in that instance all the disability would be attributable under the law to the second injury, you see, because he didn't have the disability before the second injury, even though in his condition, even though had he been perfectly healthy he might not have had that kind of an affect [sic] from the second injury.

By the same token, this second injury did not in any way cause any increase in his pain or change in his painful condition, so he already had that pain so he lives with it, he wouldn't recover for the pain, but for the second injury, the pain from his first injury would have gone away or from the second injury he suffered additional pain, then he'd be entitled to recover for that additional pain. Or had the pain gone away from the first injury but it didn't because of the second injury, he'd be entitled to recover for that pain.

*I'm just giving you that example to be sure you don't get confused on this question we have here because of the two injuries.*

In other words, if you believe from the evidence in this case, for example, that Mr. Sandidge had his first injury then he had the second injury and you don't believe he suffered any pain because of his second injury, then he wouldn't be entitled to recover for pain and because all the pain would be from the first injury whether he had the second injury or not. That's what we're talking about here on this question about aggravation.

Record Vol. IV at 260–62 (emphasis added).

Out of the presence of the jury, Salen Protexa's counsel objected to the court's instruction, asserting that (1) the court had not instructed the jury that, if the second injury was only temporary, Sandidge was not entitled to recover for injuries sustained in the first accident; (2) the court had recited the evidence in a manner prejudicial to Salen Protexa by stating that San-

didge had no disability when he returned to work after the first accident but that he was incapable of working after the second accident because, in fact, he did work for sixteen months after the second accident; and (3) the court should have instructed the jury that, if it found that Sandidge's present and possible future problems were caused by the first accident, it should not consider these problems as arising from the March 1981 accident. Although the district judge disagreed with Salen Protexa's representation of his instruction, he agreed to issue a supplemental instruction. When the jury returned, he further charged:

> I'll have to give you some additional instructions. I want to give you some instructions. As I said, *during my instructions I made some illustrative comments to try to explain the application of the rule of law and at times I resorted to certain hypothetical matters.* Of course, I did not mention every scrap of evidence you have heard, nor did I use much of the evidence that was related to you in my charge, but *those part that I did use were simply for illustrative purposes.* I did not intend for you to give any additional emphasis to those particular things. That's not the purpose of it. *You are the judges of the evidence and the weight of the evidence and you consider all the evidence, whether I mentioned it or not in my charge, in deciding this case.*

> Further, one of the counsel has indicated that I said to you when Mr. Sandidge returned to work that he had no disability after the first injury. If I did say that, I certainly did not intend to say that because I didn't intend to say he did have a disability or didn't have a disability. *You heard the evidence in the case so you decide if he was disabled when he went back to work or not and, if so, how much. That is for your determination.*

> So, if I made any comment like that, it was unintentional on my part. *I'm not saying either way, because that's not my prerogative, it's yours, it is your prerogative as jurors.*

> When you go back into the jury room to deliberate and finally, of course, as I asserted in my original charge, but there is some question about it, certainly as I told you earlier the defendant is not liable for any disability or injury or pain that Mr. Sandidge may have suffered in the first accident. That accident is in this case only because of the second accident. That's all. The defendant is not liable for anything that happened in the first accident.

> What I did say was the fact a person was injured previously does not diminish any right that he has to damages if he is subsequently injured as to any damages that flow from the second accident as it may have aggravated the condition he had from the first accident or condition he may have had from birth or whatever. That was my intended purpose.

Record Vol. IV at 265–67 (emphasis added). Salen Protexa made no objection to the supplemental instruction.

Salen Protexa contends that, in charging the jury on the aggravation issue, the district court improperly commented upon the ultimate fact issue of disability. Specifically, Salen Protexa points to the first hypothetical posed by the court in which the court assumed that "at the time of the injury Mr. Sandidge was suffering pain, *but he wasn't disabled,*" and Salen Protexa asserts that this statement was not supported by the evidence. The district court, Salen Protexa concludes, committed prejudicial error by impressing its own view of the facts on the jury and thereby invading the province of the factfinder. At no point does Salen Protexa argue that the evidence was insufficient to support the verdict.

■ The standard for reviewing an instruction is whether the jury was misled in any way and whether it had an understanding of the issues and its duty to determine those issues. *See Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 424–26 (5th Cir. 1985); *Robert v. Conti Carriers & Termi-*

*nals, Inc.,* 692 F.2d 22, 24 (5th Cir.1982).[7] "The function of the reviewing court with respect to instructions is to satisfy itself that the instructions show no tendency to confuse or to mislead the jury with respect to the applicable principles of law." *Rohner, Gehrig & Co. v. Capital City Bank,* 655 F.2d 571, 580 (5th Cir.1981) (citing 9 C. Wright & A. Miller, *supra,* § 2558). No harmful error is committed if the charge viewed as a whole correctly instructs the jury on the law, even though a portion is technically imperfect. *See Pierce v. Ramsey Winch Co.,* 753 F.2d at 424–26. A district judge has wide discretion to select his own words and to charge in his own style, *see Andry v. Farrell Lines, Inc.,* 478 F.2d 758, 759 (5th Cir.1973) (citing *Bass v. International Brotherhood of Boilermakers,* 630 F.2d 1058, 1061 (5th Cir.1980)), which includes the use of illustrations to clarify an instruction. *See Martin v. Texaco, Inc.,* 726 F.2d 207, 214 (5th Cir.1984); *Andry v. Farrell Lines, Inc.,* 478 F.2d at 759. "Moreover, the trial court has a duty to give instructions that are meaningful and translated into terms the jury can understand." *Martin v. Texaco, Inc.,* 726 F.2d at 214. Although the district court has the right to comment on the evidence, it may not comment on the ultimate factual issues to be decided. *See Belton v. Fibreboard Corp.,* 724 F.2d 500, 505 (5th Cir. 1984); *see also Travelers Insurance Co. v. Ryan,* 416 F.2d 362, 364 (5th Cir.1969); *cf. Quercia v. United States,* 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933)

(trial judge's instruction in criminal case that testifying defendant's mannerisms indicated that he was lying constituted prejudicial error). "[E]xplanatory comments are prejudicial only when the court fails to make clear to the jurors that they alone have the burden of decision." *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1292 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); *see* 11 C. Wright & A. Miller, *supra,* § 2886. Although Salen Protexa objected to the court's instruction at the charge conference between court and counsel, it failed to raise any objection to the court's supplemental instruction, which was issued at the bidding of Salen Protexa to correct any error the court may have made in its previous instruction.[8] When no objection is raised to a jury charge in the trial court, we cannot consider it on appeal, Fed.R.Civ.P. 51, unless the error is so fundamental as to result in a miscarriage of justice. *See Higgins v. Smith International, Inc.,* 716 F.2d 278, 283 n. 4 (5th Cir.1983); *Whiting v. Jackson State University,* 616 F.2d 116, 126–27 (5th Cir.1980).[9]

■ Reviewing the court's instruction as a whole in the light of the foregoing principles, we find that the charge was not improper, much less on error so fundamental as to result in a miscarriage of justice. The allegedly prejudicial remarks pointed to by Salen Protexa are clearly made in the context of a hypothetical involving a work-

---

**7.** *See also Hornsby Oil Co. v. Champion Spark Plug Co.,* 714 F.2d 1384, 1391 n. 5 (5th Cir.1983); *Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1100 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

**8.** In discussing Fed.R.Civ.P. 51, we have observed:

Rule 51 clearly sets forth the mechanism for preserving error with respect to rejection of a proffered jury instruction; counsel must, after the charge is read and before the jury begins to deliberate, object and state distinctly the grounds upon which submission of the instruction is urged. "The purpose of the rule is to enable the trial court to correct any error it may have made before the jury begins its deliberations and thus avoid the necessity of a

new trial." *Lang v. Texas & P. Ry.,* 624 F.2d 1275, 1279 (5th Cir.1980).
*Pierce v. Ramsey Winch Co.,* 753 F.2d at 423; *see Little v. Green,* 428 F.2d 1061, 1069 (5th Cir.) (approving procedure for Rule 51-objections), *cert. denied,* 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970).

**9.** *See also Colomb v. Texaco, Inc.,* 736 F.2d 218, 222 (5th Cir.1984); *Robin v. Wilson Bros. Drilling,* 719 F.2d 96, 97 (5th Cir.1983). This plain error exception to Rule 51 will only be exercised in exceptional cases "where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." 9 C. Wright & A. Miller, *supra,* § 2558, at 675, *quoted in Liner v. J.B. Talley & Co.,* 618 F.2d 327, 329–30 (5th Cir.1980).

er who becomes disabled after a second accident. The remarks did not convey the sense that there was but one way to view the evidence. In the supplemental charge, the court expressly indicated that its prior remarks had been made in hypothetic form for illustrative purposes. Moreover, the court's instruction included a hypothetical incorporating Salen Protexa's theory of the case.[10] These illustrations were utilized to clarify the court's instruction on the law and did not amount to impermissible comment upon an ultimate issue of fact. The court's instruction further emphasized that the jury bore the burden of decision on the issue of disability. Because the court made it plain that the jury bore this burden, and because its instruction did not mislead or confuse the jury as to the applicable law, we find that the court did not plainly err in charging the jury on the aggravation issue.

## V.

█ Finally, Sandidge contends that this appeal is frivolous and warrants an award of double costs and attorney's fees. "Courts of appeals may award damages, including attorney's fees and single or double costs, to an appellee when an appeal is frivolous." *Hagerty v. Succession of Clement,* 749 F.2d 217, 221 (5th Cir.1984); *see* 28 U.S.C. § 1912; Fed.R.App.P. 38. Although Salen Protexa does not challenge the evidentiary support for the jury's findings on liability and damages, its claims of error, though not compelling, are hardly so devoid of merit as to be frivolous. Therefore, Sandidge is not entitled to an award of fees or costs.

## VI.

For the foregoing reasons, we affirm the judgment of the district court and decline to award Sandidge costs or fees.

AFFIRMED.

10. The court indicated that its hypotheticals incorporated only a small segment of the evidence that had been presented to the jury. These

hypotheticals were clearly streamlined for the sole purpose of clarifying by illustration the issue of aggravation.