**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 94-60746
(Summary Calendar)

LORENZO LEE LONGINO and
Wife, CYNTHIA JOHNSON LONGINO,

                                        Plaintiffs-Appellants,

                        versus

CHILES OFFSHORE, INC.,

                                        Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
(2:90-CV-200)

November 16, 1995

Before GARWOOD, WIENER and PARKER, Circuit Judges.

PER CURIAM:[*]

In appealing from the district court's judgment for the

employer in this case arising under the Jones Act, 46 U.S.C. § 688,

Plaintiffs-Appellants Lorenzo Lee Longino and Cynthia Johnson

---

[*]Local Rule 47.5 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion
should not be published.

Longino, husband and wife, urge that the district court clearly erred in its causation findings and abused its discretion in allowing an alleged "surprise" witness to testify. Discerning no clear error in the court's factual findings and no abuse of discretion in its allowing the subject witness to testify for purposes of impeachment only, we affirm the judgment of the district court. In light of this decision, we deny as unnecessary the motion of Defendant-Appellee Chiles Offshore, Inc. for leave to file a supplemental brief.

I

FACTS AND PROCEEDINGS

On September 6, 1990, Longino was helping to place a 36-inch "spacer" inside the "mouse hole" on a jack-up rig. Longino was assigned to attach the geolograph line to another component of the machinery on the rig, a "kelly shuck." Upon completion of that task, Longino was asked by a fellow employee whether the spacer was ready to be dropped into the mouse hole, and Longino replied that it was. The fellow employee then dropped the spacer into the mouse hole, causing the "geolograph line" to uncoil and knock Longino off his feet.[1]

Longino testified that he landed on his upper back and shoulders and that he felt pain and soreness in his back and shoulders after the accident. Longino added that, because another crew member was off duty attending a funeral and the crew was

---

[1] When a spacer is no longer needed, it is retrieved by means of a small line, called a "geolograph line," which is attached to the spacer in anticipation of such eventuality.

2

attempting to qualify for a bonus conditioned on there being no lost-time accidents for one year, he (Longino) felt compelled to continue working after his fall. Marty Granger, the only crewman who saw Longino fall, testified that, although Longino's feet were swept from under him by the geolograph line, causing him to fall on his side, Longino's head and shoulders did not touch the surface.

Three days later, on September 9, 1990, Longino stepped off a rotary table and fell onto his back. He did not complain of injury immediately after either incident.

Chiles introduced evidence to show that Longino had complained of numbness in his hands and arms prior to the accidents.[2] As noted, however, Longino did not complain of numbness or soreness immediately following his accidents. Longino's fall on September 6thSQthe one to which he attributes his injuriesSQwas not particularly serious; he merely fell onto his buttocks and hands, or onto his side, from a height of approximately one foot.

Despite the two incidents described above, Longino completed his multi-day shift without complaint,[3] working routinely until September 14, 1990. On that date Longino complained again of numbness in his arms and soreness in his shoulders and asked for medical attention. He did not, however, refer to any particular causal incident at that time.

---

[2] Longino denied that he complained of numbness in his hands and arms prior to the accidents.

[3] Longino testified that he complained to Doug Hoffpauir, Billy Roderick, and Byron Poole, but Hoffpauir and Roderick denied that Longino had complained to them. Poole did not testify at trial.

In response to his request for treatment, Longino was taken to a hospital where he stayed for eight days. Within two weeks he underwent cervical fusion surgery. Longino told his treating physicians that his "soreness" first appeared after his September 6, 1990, accident. Even though Longino reported both incidents to his treating physicians, one of those physicians was of the opinion that Longino's cervical abnormality existed prior to the September 6, 1990, fall. This physician was of the opinion that either fall could have aggravated the preexisting condition; however, no firm opinion was expressed as to whether one or both of the falls in fact aggravated the condition. ("The falls could have made a preexisting structure abnormality symptomatic.")

After Mr. and Mrs. Longino filed the instant Jones Act lawsuit against the rig owner, the district court conducted a bench trial. The court denied Chiles' motion for a directed verdict, but after Chiles rested the district court entered judgment for that employer. The court found that Chiles' negligence was not a proximate cause of Longino's injury,[4] noting that Longino's testimony was contradicted by the testimony of five other crew members and rejecting Longino's contention that the crew members would perjure themselves as revenge for his having caused the loss of the bonus.

Based principally on Longino's behavior before and after the

---

[4] The district court also found that Longino was a "seaman," that the jack-up rig was a "vessel" for purposes of the Jones Act, that Chiles had been negligent, and that Longino was contributorily negligent. Chiles has not appealed these findings.

4

accident, the relatively mild nature of Longino's fall, and the medical testimony, the district court found that Longino had a preexisting condition and that it was not aggravated by the September 6, 1990, accident. After the court denied the Longinos' Fed. R. Civ. P. 59(e) motion, they timely filed a notice of appeal.

## II

## ANALYSIS

Negligence, seaworthiness, and causation are questions of fact in admiralty actions. Verdin v. C & B Boat Co., Inc., 860 F.2d 150, 154 (5th Cir. 1988). When, as here, the action was tried without a jury, we review the district court's factual findings under the clearly erroneous standard, giving due regard to that court's opportunity to judge the credibility of the witnesses. Fed. R. Civ. P. 52(a); Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352-53 (5th Cir.), cert. denied, 488 U.S. 968 (1988). The plaintiff's burden in showing causation in a Jones Act negligence action is "featherweight," and evidence of the slightest negligence will sustain a finding of liability. Johnson, 845 F.2d at 1352.

Longino characterizes as clearly erroneous the district court's finding that the September 6, 1990, accident did not cause his injury. He insists that his testimony to the effect that he fell on his back and shoulders was not fully rebutted by Chiles. Longino argues that he may recover, notwithstanding a preexisting condition, if the accident aggravated that condition, citing Sandidge v. Salen Offshore Drilling Co., 764 F.2d 252 (5th Cir. 1985).

5

In Sandidge, we held that the district court had not misled the jury by using a hypothetical case to illustrate its instruction that the plaintiff would be entitled to recover if he proved that the defendant had caused an injury that aggravated a preexisting condition. 764 F.2d at 260-63. The Third Circuit, in Evans v. United Arab Shipping Co. S.A.G., 4 F.3d 207, 209-10, 212-13 (3rd Cir. 1993), cert. denied, 114 S. Ct. 1065 (1994), held that a seaman could recover, under the "featherweight" standard applicable in Jones Act cases for a condition that was aggravated by a work-related accident, even though he had failed to present sufficient evidence to show causation under the traditional common law standard.

Here, the district court could have found that the accident aggravated Longino's preexisting condition; however, its conclusion to the contrary is not clearly erroneous.[5] See Zapata Haynie Corp. v. Arthur, 980 F.2d 287, 289 (5th Cir. 1992) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (internal quotations omitted), cert. denied, 113 S. Ct. 2999 (1993). As the district court did not clearly err in finding that the accident neither proximately caused Longino's injury nor aggravated a pre-existing condition, we affirm that court's judgment in favor of Chiles.

Longino contends nevertheless that the district court erred

---

[5] The district court's reliance on Varnado v. Ocean Drilling & Exploration Co., 608 F.2d 557, 560 (5th Cir. 1979), was misplaced. In Varnado, we considered a different legal issue-- whether the evidence was adequate to make a jury issue on proximate cause. Id.

reversibly in permitting Alfred Roberts to testify, as Chiles had failed to identify Roberts as a witness in its responses to Longino's interrogatories or in connection with preparation of the joint pre-trial order. The district court permitted Roberts to testify because his testimony was offered for impeachment purposes only.

The requirement of Fed. R. Civ. P. 26(a)(3)SQthat a party must provide to other parties information regarding the evidence that it may present at trialSQdoes not apply to evidence presented solely for impeachment purposes. Evidentiary rulings are reviewed for abuse of discretion and will require reversal only if the challenged ruling affects a substantial right of the aggrieved party. This is especially so in bench trials. Southern Pacific Transp. Co. v. Chabert, 973 F.2d 441, 448 (5th Cir. 1992), cert. denied, 113 S. Ct. 1585 (1993).

> A trial judge sitting without a jury is entitled to greater latitude in the admission or exclusion of evidence. In a bench trial, reversal is only warranted if all of the competent evidence is insufficient to support the judgment, or if it affirmatively appears that the incompetent evidence induced the court to make an essential finding which it otherwise would not have made.

Id. (footnote omitted). In contrasting Longino's testimony with that of the rest of the crew in connection with its analysis of the causation issue, the district court took particular note of Roberts' testimony that Longino was observed walking over a couch as he was leaving the rig on his way to the hospital. This evidence may well have induced the district court to make its essential finding on the issue of causation.

7

Longino testified that, on the day he left the rig, he could barely hold his head up, and doubts that he could have run to catch the helicopter; but Roberts' testimony impeached these statements. Roberts also testified that Longino had complained of numbness in his arms prior to his accident. This testimony was merely cumulative. As Roberts' testimony was offered solely for impeachment purposes, the district court did not abuse its discretion in admitting it.

Finally, Longino argues that the district court erred reversibly in finding him contributorily negligent. We note, however, that the district court found as fact that, in response to his co-worker's inquiry, Longino had announced that he was ready for the spacer to be dropped even though he had failed to determine first that he was clear of the geolograph line. The district court's conclusion that Longino was negligent in failing to avoid the hazard was not clearly erroneous.

AFFIRMED; Motion DENIED as unnecessary.